ON MOTION FOR REHEARING
CHANDLER, Justice,
for the Court:
¶ 1. The motion for rehearing is denied. The original opinion is withdrawn, and this opinion is substituted.
¶ 2. These two appeals are from consolidated chancery-court cases. In the first case, Diamondhead Country Club and Property Owners Association, Inc. (“Dia-mondhead”) sued Thomas R. Alfonso, III, and Anne Scafidi Cordova,[1] d/b/a Bay Jourdan Publishing Co. (“BJP”) for breach of a contract to publish The Diamondhead News. On July 2, 1997, the chancery court entered a preliminary injunction order preventing BJP from publishing The Dia-mondhead News, selling advertising for The Diamondhead News, collecting or disposing of advertising revenues derived from the publication of The Diamondhead News, and interfering with the printing, *1057 publication, or distribution of The Dia-mondhead News. The chancery court also found that an arbitration clause in the publishing contract was inapplicable to the lawsuit. The chancery court denied BJP’s two subsequent motions to compel arbitration of the breach-of-contract dispute. BJP appeals from the chancery court’s latest denial of arbitration.
¶ 3. In the second case, BJP sued Dia-mondhead and Gulf Publishing Co., Inc., d/b/a The Sim Herald (“Gulf Publishing”), for intentional interference with the publishing contract. Gulf Publishing filed a motion for summary judgment. The court granted summary judgment to Gulf Publishing and directed the entry of a final judgment as to Gulf Publishing pursuant to Mississippi Rule of Civil Procedure 54(b). BJP appeals from the grant of summary judgment.
¶ 4. We affirm the chancery court’s order denying BJP’s third motion to compel arbitration because the issue was ruled upon previously, and no appeal was taken. Finding genuine issues of material fact for trial, we reverse the chancery court’s order granting summary judgment to Dia-mondhead and Gulf Publishing, and remand this case for further proceedings.

FACTS

A. Diamondhead v. BJP

¶ 5. On November 4, 1996, Diamondhead and BJP entered into a contract providing for BJP’s publication of The Diamondhead News. Diamondhead filed a complaint for breach of contract on June 19, 1997, requesting preliminary and permanent in-junctive relief against BJP. Diamondhead complained that BJP had breached the contract because it had withdrawn funds from the parties’ joint bank account and had deposited them in BJP’s private account, had failed to produce a detailed accounting upon request, had superceded Diamondhead’s editorial control by publishing content unapproved by Diamond-head, and had used an unauthorized mailing list. At a hearing on July 1,1997, BJP requested to arbitrate the dispute pursuant to the contract’s arbitration clause. On July 2,1997, the chancellor granted the preliminary injunction, finding that
(a) BJP refused to use the designated joint venture’s account, they placed joint venture funds in a private account, and refused to remedy the situation by meeting with the Board or meeting at the bank; (b) BJP refused to provide an accounting timely ...; (c) BJP has apparently sold advertising for the July issue and neither placed those funds in the joint account or produced an accounting; and, (d) BJP has breached the editorial control provisions of the agreement by publishing the July paper.
The chancellor entered a preliminary injunction enjoining BJP from publishing The Diamondhead News, selling advertising for The Diamondhead News, collecting or disposing of advertising revenues derived from the publication of The Dia-mondhead News, and interfering with the printing, publication, or distribution of The Diamondhead News. The chancellor rejected BJP’s request for arbitration, finding that the arbitration clause did not prevent Diamondhead from seeking equitable relief in chancery court. BJP did not appeal the chancellor’s denial of arbitration.
¶ 6. On June 29, 2001, BJP filed a “Motion To Dismiss and a Motion to Stay Proceeding and To Compel Arbitration.” On March 24, 2005, the chancellor overruled the motion, finding that BJP had waived its right to demand arbitration. BJP failed to appeal from this order. On August 5, 2009, BJP filed another “Motion To Dismiss, or in the Alternative to Stay and Compel Arbitration.” The chancellor *1058 overruled that motion on December 6, 2009. Applying our decision in MS Credit Center, Inc., v. Horton, 926 So.2d 167 (2006), the chancellor held that BJP had waived its right to arbitration through “substantial and active participation in the judicial process.” BJP has appealed from that order.

B. Alfonso v. Gulf Publishing

¶ 7. Gulf Publishing publishes The Sun Herald newspaper, which circulates in South Mississippi. Gulf Publishing began publishing The Diamondhead News in August 1997. On June 12, 2000, BJP commenced a circuit court action against Diamondhead and Gulf Publishing. BJP alleged that Gulf Publishing had intentionally interfered with BJP’s contract to publish The Diamondhead News. Specifically, BJP alleged that, before the chancery court entered the preliminary injunction, Diamondhead and Gulf Publishing had been negotiating for Gulf Publishing to publish The Diamondhead News, contingent upon Diamondhead’s termination of the contract with BJP. On February 8, 2001, the circuit court transferred the case to the Chancery Court of Hancock County.
¶ 8. Gulf Publishing moved for summary judgment. It asserted that Diamondhead had terminated its contract with BJP prior to any negotiations between Diamondhead and Gulf Publishing. It attached testimony from the transcript of the June 30, 1997, preliminary injunction hearing to show that no negotiations between Dia-mondhead and Gulf Publishing had occurred prior to June 1997. In the transcript, a member of the Diamondhead board of directors testified that it was only after Diamondhead’s relationship with BJP had broken down that Diamondhead had contacted Gulf Publishing to publish the next month’s newsletter.
¶ 9. Gulf Publishing also produced a letter dated June 5, 1997, from Diamondhead to BJP that notified BJP of its intention to terminate the publishing contract. That letter stated, “effective immediately the contract between Diamondhead Country Club & Property Owners Association, Inc., and the Bay Jourdan Publishing Company is cancelled due to the following reasons: ...” However, Section XVI of the publishing contract between Diamondhead and BJP, titled “Termination for material breach,” provided for termination upon sixty days’ written notice and opportunity to cure. That section stated:
This agreement may be terminated by any party for the material breach of any other party. The party intending to terminate shall give the defaulting party sixty (60) days’ written notice specifying with particularity the condition, act, omission, or course of conduct asserted to constitute such material breach. The agreement may not be terminated under this provision if during such sixty (601-day period the defaulting party has cured, corrected, or eliminated such material breach or has taken steps to cure, correct, or eliminate such material breach, which steps, if diligently prosecuted to a conclusion, are reasonably designed to effect a cure, correction or elimination.
Gulf Publishing also argued that BJP could not prove proximate causation because the preliminary injunction order effectively had terminated the contract and had made it impossible for Gulf Publishing to have damaged BJP.
¶ 10. In response, BJP argued that in June 1997, the contract’s status had been disputed and that the preliminary injunction had not terminated the contract, but only suspended its operation. BJP produced two documents supporting its intentional-interference claim. In a “letter to *1059 the community,” published in The Dia-mondhead News in 2000, Frank Jerome stated that while he was the interim general manager of the Diamondhead Property Owners’ Association, he had “arranged a meeting and Rene Duffour and I met with them one late afternoon. Out of this meeting came an agreement that the Sun Herald would bear all expenses in getting out our monthly newspaper.” BJP also presented a faxed letter, dated June 6, 1997, from Gulf Publishing to Diamondhead.[2] That letter stated, in pertinent part:
Gulf Publishing Company is interested in publishing The Diamondhead News. We are particularly pleased that you came to us first ... we are certain your current publisher was not in a profitable situation with this product based on the numbers we developed.... Since we are proposing to start our formal relationship in August, we propose that we print for your association, at no cost to the association, 5,000 copies.... Call this a good will gesture for our August marriage.
¶ 11. BJP argued that its two pieces of evidence — the published letter by Jerome and the June 6, 1997, letter from Gulf Publishing to Diamondhead — showed negotiations between Diamondhead and Gulf Publishing before the July 2,1997, preliminary injunction, and created a genuine issue of material fact as to whether Gulf Publishing proximately had caused damage to BJP due to interference with its publishing contract with Diamondhead that culminated in Diamondhead’s pursuit of a preliminary injunction.
¶ 12. The chancellor granted summary judgment in favor of Gulf Publishing, finding that because the preliminary injunction was entered against BJP, “prohibiting them from publishing, advertising, or otherwise dealing with The Diamondhead News newsletter[,] there was no contract in force between [BJP] and [Diamondhead] with which Gulf Publishing could conceivably have interfered since the injunction enjoined [Diamondhead] from acting under the contract at all since the suit against Gulf Publishing was filed.” BJP appeals.

DISCUSSION

I. WHETHER THE TRIAL COURT ERRED BY DENYING BJP’S THIRD MOTION TO COMPEL ARBITRATION.
¶ 13. In the order granting a preliminary injunction, the chancellor denied BJP’s request for arbitration. BJP filed a motion to compel arbitration on June 28, 2001. The chancery court denied the motion on March 18, 2005. BJP could have, but did not, appeal from that order. See Tupelo Auto Sales, Ltd. v. Scott, 844 So.2d 1167, 1170 (Miss.2003) (holding that a direct appeal may be taken from an order denying a motion to compel arbitration). On August 5, 2009, BJP filed another Motion to Dismiss and to Compel Arbitration, which was denied on December 6, 2009. BJP filed a timely notice of appeal from that order.
¶ 14. Rule 4(a) of the Mississippi Rules of Appellate Procedure requires that a notice of appeal be filed within thirty days of the date the judgment was entered. M.R.A.P. 4(a). We find that the chancellor correctly denied BJP’s third motion to compel arbitration because the issue already had been ruled upon on March 18, 2005, and no appeal was taken. We affirm *1060 the chancery court’s order denying the Motion to Dismiss and Motion to Compel Arbitration.
II. WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF GULF PUBLISHING.

A. Standard of Review

¶ 15. This Court applies a de novo standard of review to a chancellor’s grant of summary judgment. Whiting v. Univ. of S. Miss., 62 So.3d 907, 914 (Miss.2011). If, upon review of all pleadings, depositions, interrogatory answers, and admissions on file, there is no genuine issue of material fact, summary judgment in favor of the moving party is proper. M.R.C.P. 56(c). All evidentiary matters must be viewed in the light most favorable to the nonmoving party. Evan Johnson & Sons Constr., Inc. v. State, 877 So.2d 360, 364 (Miss.2004).
¶ 16. “A material fact is one which resolves any ‘of the issues properly raised by the parties.’ ” Strantz v. Pinion, 652 So.2d 738, 741 (Miss.1995) (quoting Stegall v. WTWV, Inc., 609 So.2d 348, 351 (Miss.1992)). “[Wjhen a party, opposing summary judgment on a claim or defense as to which that party will bear the burden of proof at trial, fails to make a showing sufficient to establish an essential element of the claim or defense, then all other facts are immaterial, and the moving party is entitled to judgment as a matter of law.” Galloway v. Travelers Ins. Co., 515 So.2d 678, 684 (Miss.1987).

B. Intentional interference with contract

¶ 17. To survive Gulf Publishing’s motion for summary judgment, BJP had to show there were genuine issues of material fact on every element of its claim of intentional interference with contract against Gulf Publishing. The elements of intentional interference with contract are: “(1) that the acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiff in his/her lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which acts constitute malice); and (4) that actual damage or loss resulted,” and “(5) the defendant’s acts were the proximate cause of the loss or damage suffered by the plaintiff.” Scruggs, Millette, Bozeman & Dent, P.A. v. Merkl & Cocke, P.A., 910 So.2d 1093, 1098-99 (Miss.2005).
¶ 18. In Scruggs, this Court held that “a plaintiff claiming intentional interference with a contract must prove that ‘the contract would have been performed but for the alleged interference.’ ” Scruggs, 910 So.2d at 1098-99 (citing Par Industries, Inc. v. Target Container Co., 708 So.2d 44 (Miss.1998)). The Court also focused on the lack of intent and malice by the third party in affirming the trial court’s dismissal of the intentional-interference-with-contract claim, holding that, “for intent to be implied, a plaintiff must show that the defendant knew of the existence of a contract and did a wrongful act without legal or social justification that was certain or substantially certain would result in interference with the contract.” Id. at 1099 (citing Par Industries, 708 So.2d at 48). The Court also held the alleged interference must be wrongful, meaning the interfering third party was not acting “in the exercise of a legitimate interest or right, which constitutes ‘privileged interference.’ ” Id. at 1099. In Samggs, the three interested parties were law firms arguing over attorneys’ fees in the wake of massive asbestos litigation. Id. at 1095. The Court found the appellant, Merkel & Cocke, P.A., had lacked the *1061 malice and intent to interfere with the appellee’s contract with Wilson, P.A., because the appellant could easily be “confused by all of the convoluted relationships under which the asbestos claims were handled.” Id. at 1099.
¶ 19. The letter from Gulf Publishing to Diamondhead presents a genuine issue of material fact on each of the first four elements of an interference-with-contract claim, leaving the fifth element, the question of proximate cause, determinative of whether BJP should survive the motion for summary judgment. Gulf Publishing’s brief focuses on the element of proximate cause. Gulf Publishing contends that Dia-mondhead’s June 5, 1997, termination letter to BJP, along with the July 2, 1997, preliminary injunction, made it impossible for Gulf Publishing to have interfered with the contract. To bolster this argument, Gulf Publishing provides a timeline of events, which we paraphrase:
November 4, 1996: BJP and Diamondhead entered into the contract.
May, 1997: Serious problems developed in the relationship between BJP and Diamondhead.
June 5, 1997: Diamondhead sent letter to BJP terminating contract and contacted Gulf Publishing to solicit its help in publishing The Diamondhead News.
June 6, 1997: Gulf Publishing answered Diamondhead’s inquiry and expressed an interest in publishing The Diamondhead News.
July 2, 1997: Chancery Court entered a preliminary injunction against BJP, enjoining it from any business affiliations with The Diamondhead News.
Gulf Publishing argues that it was the entry of the preliminary injunction that prevented BJP from publishing the newspaper, not any action of Gulf Publishing.
¶ 20. We find that, considering the termination letter, Gulf Publishing’s June 6, 1997, letter, and the preliminary injunction in the light most favorable to BJP, there were genuine issues of material fact for trial. While Gulf Publishing argues that Diamondhead terminated the contract with the termination letter dated June 5, 1997, that letter — along with the evidence that BJP acted outside the scope of the contract — shows only that the status of the contract prior to the preliminary injunction was in dispute. Under the contract terms, no termination could occur until sixty days after written notice, provided BJP neither cured the breach, nor took sufficient steps to cure the breach. Therefore, the question of whether or not there was a contract between BJP' and Dia-mondhead on June 6, 1997, presents a genuine issue of material fact. Under the contract terms, the June 5, 1997, letter was effective notification, but the contract was still in effect as of the next day, June 6, 1997. On June 6, 1997, Gulf Publishing stated in its letter to Diamondhead that “we are certain your current publisher was not in a profitable situation- with this product based on the numbers we developed,” and offered to publish 5,000 free copies of the next month’s issue of The Diamond-head News.
¶ 21. The June 6, 1997, letter from Gulf Publishing to Diamondhead is dated more than three weeks before the chancery court’s preliminary injunction order. That letter showed negotiations between Dia-mondhead and Gulf Publishing before the preliminary injunction at a time when the contract still was in force under its terms. Gulf Publishing argues that it could not have interfered with the contract because it was Diamondhead that first contacted Gulf Publishing about publishing the newsletter. While the June 6, 1997, letter from Gulf Publishing supports that assertion, there is no evidence as to what Diamond-head communicated to Gulf Publishing regarding the status of its contract with BJP. In the letter, Gulf Publishing recognized that BJP was the “current publish *1062 er” at the time. It is reasonable to infer that Gulf Publishing acquired that knowledge from Diamondhead. But regardless of how Gulf Publishing became aware of BJP’s contract, the letter shows it knew that, as of June 6, 1997, the contract was still in force. While this Court in Scruggs found the relationships confusing, in this case, Gulf Publishing clearly harbored no confusion about BJP’s status, because it referred to BJP as the “current publisher” of The Diamondhead News.
¶ 22. Considering the evidence in the light most favorable to BJP, on June 5, 1997, Diamondhead was unhappy with BJP’s performance of several duties under the contract. That displeasure caused Diamondhead to notify BJP of its intent to terminate the contract, and, possibly on the same day, to contact Gulf Publishing as a candidate to take over as publisher. The next day, Gulf Publishing faxed its responsive June 6, 1997, letter to Diamondhead that acknowledged BJP as the current publisher, questioned BJP’s abilities to succeed in that role, and offered an incentive to Diamondhead to switch publishers from BJP to Gulf Publishing. On June 19, 1997, Diamondhead filed a complaint against BJP for breach of contract. In that complaint, Diamondhead asserted the vital need for publication of The Diamond-head News, and requested a preliminary injunction against BJP to permit Gulf Publishing immediately to assume publication. On July 2, 1997, a preliminary injunction was entered against BJP, and it is still in force today. While it is true that the preliminary injunction prevents BJP from performing its contract with Diamondhead, the June 6, 1997, letter shows a genuine issue of material fact as to whether Gulf Publishing proximately caused Diamond-head to sever its relationship with BJP by obtaining the preliminary injunction.
¶ 23. We hold that whether Gulf Publishing’s actions proximately caused BJP’s loss of the publishing contract presents a genuine issue of material fact. The status of the contract between BJP and Dia-mondhead on June 6, 1997, is a question of fact. Considering the evidence in the light most favorable to BJP, BJP showed that, during the time that BJP was under contract with Diamondhead to publish The Diamondhead News, Gulf Publishing, in response to Diamondhead’s inquiry, sent a letter to Diamondhead stating “we are certain your current publisher was not in a profitable situation with this product based on the numbers we developed” and offering to publish 5,000 free copies of The Diamondhead News. Whether the June 6, 1997, letter was an effort by Gulf Publishing to improperly influence Diamondhead to breach its contract with BJP is a question of fact at this stage.

CONCLUSION

¶ 24. We affirm the order denying BJP’s third motion to compel arbitration because the issue already had been ruled upon on March 18, 2005, and no appeal was taken. We find that the chancery court erred by granting summary judgment in favor of Gulf Publishing, because genuine issues of material fact remain on BJP’s claim of intentional interference with contract. We reverse the chancery court’s order granting summary judgment, and remand for further proceedings.
¶ 25. AS TO 2009-CA-1457-SCT: REVERSED AND REMANDED. AS TO 2010-CA-00091-SCT: AFFIRMED.
WALLER, C.J., CARLSON AND DICKINSON, P.JJ., LAMAR, KITCHENS, PIERCE AND KING, JJ., CONCUR. RANDOLPH, J„ NOT PARTICIPATING.

. After marrying Alfonso, Cordova changed her name to Anne Cordova Alfonso.

. The June 6, 1997, letter from Gulf Publishing to Diamondhead is dated June 9, 1997, but has a fax date of June 6, 1997. Viewing the evidence, as we must, in the light most favorable to the nonmoving party, we assume that Diamondhead received the letter on June 6, 1997. Therefore, we refer to the letter as "the June 6, 1997, letter.”