# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-CA-01275-SCT

*PRESBYTERY OF ST. ANDREW,*
*PRESBYTERIAN CHURCH U.S.A., INC.*

*v.*

*FIRST PRESBYTERIAN CHURCH PCUSA OF*
*STARKVILLE, MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 07/27/2016 |
| TRIAL JUDGE: | HON. H. J. DAVIDSON, JR. |
| TRIAL COURT ATTORNEYS: | RYAN K. FRENCH |
| | DOLTON W. McALPIN |
| | P. SCOTT PHILLIPS |
| | HAROLD H. MITCHELL, JR. |
| | LLOYD J. LUNCEFORD |
| | ANDREW FRANK TOMINELLO |
| | EUGENE R. GROVES |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | P. SCOTT PHILLIPS |
| | ANDREW FRANK TOMINELLO |
| ATTORNEYS FOR APPELLEE: | RYAN K. FRENCH |
| | LLOYD J. LUNCEFORD |
| | DOLTON W. McALPIN |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 04/12/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    First Presbyterian Church PCUSA of Starkville, Mississippi, ("FPC") filed its

complaint for declaratory judgment, a temporary restraining order, and a preliminary

injunction in the Chancery Court of Oktibbeha County requesting legal protection and injunctive relief against the Presbytery of St. Andrew Presbyterian Church U.S.A., Inc. ("Presbytery"), after the Presbytery claimed FPC's property was held in trust for the Presbyterian Church in the United States of America ("PCUSA"). The chancery court granted summary judgment in favor of FPC, finding no evidence of any trust, express or implied. We affirm the finding of the chancery court.

**STATEMENT OF THE FACTS AND PROCEDURAL HISTORY**

¶2. FPC has occupied the same piece of land in central Starkville for more than 160 years, as it was founded in 1821 as a Congregational Church and mission to the Western Frontier. FPC holds title to six parcels of real property in Starkville – the most significant being the main church facility. FPC acquired the main church property in 1837, through a deed of conveyance to the "Trustees for the Presbyterian Church in the Town of Starkville." In 1924 FPC constructed its current sanctuary on the property.

¶3. FPC has transitioned into and out of multiple Presbyterian denominations, including the Old School Presbyterian Church; the Presbyterian Church, Confederate States of America; and the Presbyterian Church in the United States ("PCUS"). In 1983, the PCUS merged with another Presbyterian denomination to create the Presbyterian Church in the United States of America ("PCUSA"). FPC has been affiliated with the PCUSA since its inception.

¶4. FPC claimed that, although it was affiliated with several different Presbyterian denominations, it existed as an "independent, unincorporated religious association from its

2

founding until 2003." On June 22, 2003, FPC's governing board (its session) passed a resolution declaring that "it is in the best interest of this association that it be forthwith incorporated as a nonprofit corporation." The resolution was approved by the congregation, and FPC has remained an incorporated entity (First Presbyterian Church PCUSA of Starkille, Mississippi) since that date.

¶5. Following its incorporation, FPC conveyed to the corporation its main property and facility in Starkville. The titleholder of record was then identified as FPC's corporate entity. Any property duly transferred to the corporation remains held by and titled in the name of First Presbyterian Church, Starkville, Mississippi.

¶6. Prior to 1982, no official documents of the PCUS included trust language. Moreover, in 1953, PCUS adopted an official position unambiguously disclaiming any trust interest in property and confirming that the beneficial interest in the property remained with the congregation. In 1982, PCUS amended its constitution to include the word "trust." Further, a reservation provision was included with the adoption of the trust clause, which allowed a local church not to be required to seek or obtain consent or approval of any other entity to buy, sell, or mortgage the church's property as a church of the PCUS.

¶7. After the PCUSA was formed, the Book of Order contained a trust clause, and local churches then were required to "obtain permission before selling, mortgaging, or otherwise encumbering the property of that particular church." Because this new trust clause was a departure from prior practice, the PCUSA's constitution allowed for a "property exception" which provided as follows:

The provisions of this chapter shall apply to all congregations of the Presbyterian Church (U.S.A.). Except that any congregation which was not subject to a similar provision of the constitution of the church of which it was a part, prior to the reunion of the Presbyterian Church in the United States [PCUS] and the United Presbyterian Church in the United States of America [UPC] to form the Presbyterian Church (U.S.A.) [PC(USA)], shall be excused from the provision of this chapter if the congregation, within a period of eight years following the establishment of the Presbyterian Church (U.S.A.), vote to be exempt from such provision in a regularly called meeting and shall thereafter notify the Presbytery of which it is a constituent church of such vote. The particular church voting to be so exempt shall hold title to its property and exercise its privileges of incorporation and property ownership under the provisions of the Constitution to which it was subject immediately prior to the establishment of the Presbyterian Church (U.S.A.)[PC(USA)]. This paragraph may not be amended.

¶8.    In response to this "opt out" clause and a session meeting with a representative of the presbytery, FPC voted to exempt itself by passing a resolution voting to opt out of the trust clause. The resolution read that FPC

does hereby vote to be exempt from the provisions of Chapter VIII of the Book of Order to which it was not subject prior to the Reunion which established PCUSA and *will hold title to its property* and exercise its privileges of incorporation under the Book of Church Order, PCUS (1982-1983 edition).

(Emphasis added.) FPC maintained this same position for the next few years, as evinced by session minutes from a June 1989 meeting.

Elder James Long brought it to the attention of the Session that he had talked with David Snellgrove at Presbytery regarding the property question and determined that in 1984 we passed a resolution at a Congregational Meeting to remain under the Old Book of Church Order. In the beginning of 1990 Presbytery will publish a list of churches who opted to remain under the Old Book of Church Order. Elder Long further stated at the time of the resolution that the Transition Commission met and acted on the resolution. Elder Long has requested a copy of the minutes of this Commission which our name appears. At the present time there are three situations which could exist under the Old Book of Church Order.

4

1. If there was a split in the congregation, the Presbytery would decide which half would get the property.
2. If our church is dissolved then Presbytery gets the property.
3. If we pull out of the Presbyterian Church, we get our property.

These are the three scenarios we are operating under. Rev. Parsons stated that he had re-submitted the request so as to cover this church in the eventuality that no action was taken earlier.

¶9.     When incorporating in 2003, and subsequently adopting bylaws, FPC placed in those bylaws a reaffirmation of its intent to be exempt. In 2005 Session minutes, FPC reported that it had submitted the following to the chief officer of the Presbytery:

The Church By Laws were introduced and it was related that the bylaws will follow the Book of Church Order *with the exception of retaining ownership of church property in the event the church dissolves. The property will not become property of the Presbytery*.

(Emphasis added.)

¶10.    The Presbytery is a council of the church and a governance level. In Presbyterian governance, the Presbytery is the central governing unit. Under the governing constitution of the PCUSA, the local presbytery is responsible for waiving or seeking enforcement of any property claims of the denomination against the local church.

¶11.    Due to increasing disagreement with the PCUSA, FPC voted to cease monetary contributions to the Presbytery and look at the possibility of joining another Presbyterian denomination. In response to schism in the membership of FPC, the Presbytery notified FPC that it had appointed a Presbytery committee, called an Administrative Commission, to "inquire into and settle difficulties" at FPC. The Administrative Commission was authorized to fire the pastor, substitute itself for FPC's elected leadership, and take over FPC's property.

5

¶12. On March 22, 2015, FPC's session passed a resolution authorizing the filing of a legal action to determine the property rights of FPC, the Presbytery, and the PCUSA. FPC sought a declaratory judgment recognizing FPC's exclusive ownership of all property held by it or in its name, free of any trust claimed by the PCUSA. FPC also requested a temporary restraining order prohibiting the Presbytery from taking control or possession of FPC's property or from interfering with FPC's property ownership.

¶13. In response, the Presbytery argued that the historic polity of the Presbyterian Church holds that when a congregation is in schism, as the Presbytery contends is the case at FPC, its presbytery determines which faction receives the property, based on which faction is loyal to its denomination of membership. The Presbytery contended that the Administrative Commission's goal was to effect reconciliation of the church's members and to hold the congregation together. According to the Presbytery, the Complaint was filed by "one faction in the schism, who currently have a majority vote of the session and believe that they have a majority of membership on their side."

¶14. The Presbytery asserted a counterclaim for declaratory relief that FPC is subject to PCUSA's Constitution, governance, and dispute-resolution procedures, resulting in dismissal of the case or holding the case in abeyance indefinitely pending review by PCUSA. In the alternative, PCUSA asked the court to declare that the subject property was held in trust for the use and benefit of the Presbytery of St. Andrew. The Presbytery also sought injunctive relief, enjoining FPC from encumbering, selling, divesting, or otherwise transferring any property until such time as the Presbytery makes a determination of the issues related to FPC.

¶15. On May 11, 2015, after a hearing, the Oktibbeha County Chancery Court entered a Preliminary Injunction for all property held by FPC against the Presbytery, enjoining the Presbytery from taking any action affecting the property rights of FPC. The Presbytery also was enjoined from asserting a trust over FPC's property.

¶16. The parties filed competing motions for summary judgment and presented argument to the chancellor. FPC argued that the only disputed issue was whether FPC owns its property, while the Presbytery argued two issues – (1) does the Presbytery have a trust interest in FPC's property, and (2) does the First Amendment permit entry of an injunction barring PCUSA from exercising its ecclesiastical authority. After the hearing, the chancellor granted FPC's motion. The chancellor stated the issue to be determined as "who is entitled to or controls the real property occupied by FPC." Specifically, the chancellor was tasked with determining the relationship between the local church (FPC) and the parent church (PCUSA) and whether that relationship gave rise to a trust property interest in PCUSA to FPC's property. While the Presbytery argued that it considered FPC's property to be held in trust for the PCUSA, FPC argued that its past affiliation with PCUSA did not entail a trust-clause provision.

¶17. The chancellor determined that it was undisputed that FPC had obtained the deeds of conveyance and paid all consideration for titles to the various properties at issue. The chancellor ascertained that no trust provisions existed in any of those deeds. He also determined that no express trust agreements existed outside the deeds between the parties. The chancellor found no evidence that there was any intention to create a trust relationship.

"There are no documents presented whereby resolutions were properly passed or votes were taken to establish a written express trust or of any indication whatsoever, that there was any mention of even an oral express trust." The chancellor concluded that:

> there was and is no traditional express trust applicable herein in the documents of title, nor any legally enforceable and separate traditional trust instrument that would operate to vest a beneficial interest in and over the legally titled property of FPC to PCUSA.

The chancellor also found there was no constructive trust as implied by law based on the facts as agreed upon by the parties. Based on the evidence presented, the chancellor concluded that FPC clearly intended to hold title to its property.

## ISSUES

¶18.    On appeal, the Presbytery raises the following two issues:

I.      Whether the chancery court erred as a matter of law in determining the Presbytery did not have a trust interest in the real and personal property of FPC.

II.     Whether entry of the preliminary injunction violated its rights under the First Amendment to the United States Constitution by barring the Presbytery from exercising jurisdiction over a member congregation of its denomination and, further, from disciplining its members and ministers from violating church doctrine.[1]

## STANDARD OF REVIEW

¶19.    This Court applies a de novo standard of review to a chancellor's grant of summary judgment. *Alfonso v. Gulf Publ'g Co.*, 87 So. 3d 1055, 1060 (Miss. 2012). If, upon review of all pleadings, depositions, interrogatory answers, and admissions on file, there is no genuine issue of material fact, summary judgment in favor of the moving party is proper.

---

[1] This argument is now moot, for FPC is no longer a member of the PCUSA.

M.R.C.P. 56(c). All evidentiary matters must be viewed in the light most favorable to the

nonmoving party. *Evan Johnson & Sons Constr., Inc. v. State*, 877 So. 2d 360, 364 (Miss.

2004).

## ANALYSIS

**Whether the chancery court erred as a matter of law in determining the Presbytery did not have a trust interest in the real and personal property of FPC.**

¶20.    Mississippi has adopted the "neutral principles of law" approach for resolving church

property disputes. *See Schmidt v. Catholic Diocese of Biloxi*, 18 So. 3d 814, 824 (Miss.

2009); *Church of God Pentecostal, Inc. v. Freewill Pentecostal Church of God, Inc.*, 716

So. 2d 200, 206 (Miss. 1998).

> The neutral-principles approach "relies on objective, traditional concepts of trust and property law. . . ." *Id.* at 205. "It calls 'for the completely secular examination of deeds to the church property, state statutes and existing local and general church constitutions, by-laws, canons, Books of Discipline and the like. . . .' " *Id.* (quoting *Protestant Episcopal Church in Diocese of N.J. v. Graves*, 83 N.J. 572, 417 A.2d 19, 23 (N.J. 1980), *cert. denied sub nom. Moore v. Protestant Episcopal Church in Diocese of N.J.*, 449 U.S. 1131, 101 S. Ct. 954, 67 L. Ed. 2d 119 (1981)). Religious documents must be carefully scrutinized in purely secular terms without relying on religious precepts. *Church of God Pentecostal*, 716 So. 2d at 205-06 (citing [*Jones v.*] *Wolf*, 443 U.S. [595,] 604, 99 S. Ct. 3020, [61 L. Ed. 2d 775 (1979)]). If a deed, corporate charter, or religious document incorporates religious concepts in its provisions concerning ownership of the property, the court must defer to the authority of the ecclesiastical body so as to avoid resolving any religious controversy. *Wolf*, 443 U.S. at 604, 99 S. Ct. 3020 (citing *Serbian Eastern Orthodox Diocese* [*v. Milivojevich*], 426 U.S. [696,] 709, 96 S. Ct. 2372, [49 L. Ed. 2d 151 (19760]).

*Schmidt*, 18 So. 3d at 824.

¶21.    As the chancellor held, the underlying reason for the schism among FPC members and

9

between FPC and the Presbytery is not the issue before this Court. The only issue to be decided is whether PCUSA ever had a trust interest in FPC's property. We find that the chancellor properly found that it did not.

¶22.	FPC argues that no trust exists, whether express or implied, constructive or resulting. FPC relies on the "opt out" provision and other documents to support its position that no trust was ever created. The Presbytery argues the FPC agreed to be bound by PCUS's inclusionary trust amendment and that FPC's continued allegiance to the higher church through the adoption of the Constitution and Book of Order, and acceptance of the benefits of its affiliation supports the enforceability of the trust interest.

¶23.	Generally, trusts are classified under two broad categories: (1) express trusts and (2) implied trusts. Mississippi law requires that "no trust of or in any real property can be created except by written instrument signed by the party who declares or creates such trust. . . ." Miss. Code Ann. § 91-8-407 (Rev. 2013). Neither party asserted the existence of any writing signed by the proper FPC officials after authorization that satisfies Section 91-8-407, whether by original deed or separate trust instrument. Likewise, no declaration of trust is filed in the land records of Oktibbeha County, Mississippi, as provided by Section 91-8-407(b)(2).

¶24.	No express trusts were entered into by the parties under traditional Mississippi trust law. No reference exists in any deed to creation of a trust relationship. It follows that no clear expression of an intent to create a trust exists, nor any reference even to the term "trust." Neither party has asserted the opposite. Likewise, no separate document such as a trust instrument exists in writing. Again, neither party asserts the contrary.

¶25.    None of the elements of creation of an express trust are present, such as the writing, the clear intent of the trustor, or the confirming authority of creation of a trust and the transfer of property by the governing body. *See* ***Church of God Pentecostal***, 716 So. 2d at 208. Therefore, no traditional express trust nor any legally enforceable and separate traditional trust instrument exists or existed that would operate to vest a beneficial interest in and over the legally titled property of FPC to PCUSA.

¶26.    While an express trust must be written, implied trusts differ in that they arise by implication of the law or are presumed from the circumstances. Mississippi recognizes two types of implied trusts: (1) constructive trusts and (2) resulting trusts.

¶27.    A constructive trust is a judicially imposed remedy used to prevent unjust enrichment when one party wrongfully retains title to property. ***McNeil v. Hester***, 753 So. 2d 1057, 1064 (Miss. 2000). FPC purchased the property at issue. No evidence exists that PCUSA invested any funds into the acquisition of any of the parcels of land.  No evidence of any documents, oral conversations, minutes, or other written or oral supporting evidence exists that any arrangement of trust was contemplated in the tradition of a constructive trust.  No constructive trust is implied by law based on the facts as agreed upon by the parties.

¶28.    A resulting trust "is designed to give effect to the unwritten but actual intention of the parties at the time of the acquisition of title to the affected property." Robert E. Williford, *Trusts*, 8 Encyclopedia of Mississippi Law § 73:2, 422 (2001). Additionally, Section 91-8-407(a)(2) specifically requires the intention to create a trust. When FPC incorporated in 2003, no intention to create a trust or create an express trust relationship existed. Furthermore, it

is clear that PCUS disclaimed any interest in church trust property until just before the merger forming PCUSA. Although a trust provision was placed in the constitution when PCUSA was formed, the local churches were granted the right to opt out of that provision. FPC took measures on several different occasions to exercise its right to opt out. It did so in session meetings and bylaws of incorporation; it did so with reassurances by officers of PCUSA that compliance with the opt-out would allow FPC to hold title to its property. It is reasonable to conclude the consistent position of FPC as representative of its intent that FPC wanted to remain, as it always had, the owner of its property. There is no evidence of a resulting trust.

## CONCLUSION

¶29. Today's case does not present a doctrinal dispute, and this Court is authorized to exercise jurisdiction under neutral principles of law. The continued affiliation of FPC with PCUSA since the merger was based on FPC's belief that it had availed itself of the eight-year-opt-out provision given it by PCUSA. FPC's provision that it "will hold title to its property" is clear evidence of its intent. We find that no express or implied trust existed between the parties.

¶30. **AFFIRMED.**

**WALLER, C.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J.**

**KING, JUSTICE, DISSENTING:**

¶31. The chancellor and the majority rely on an incorrect interpretation of the "opt-out"

12

provision and of PCUS church rules to determine that PCUSA has no resulting trust interest in FPC's property. PCUSA does have a resulting trust interest in the property and, accordingly, I respectfully dissent.

¶32.　The majority asserts that "it is clear that PCUS disclaimed any interest in church trust property until just before the merger forming PCUSA." Maj. Op. at ¶ 28. This is incorrect. As early as 1925, the PCUS Book of Church Order required that title to the property of dissolved churches must be conveyed to the Presbytery. By 1950, several local churches had included in their charters provisions that completely disclaimed any property rights of PCUS in their church property. The General Assembly considered these charters and determined that they were "contrary to and in violation of the historic practice and polity of the Presbyterian Church in the United States and, if upheld by the civil courts, would make it possible for 'such churches' to withdraw from the Presbyterian Church in the United States with their property at their own discretion." It concluded that local churches do not have absolute ownership of their property without reference to the denomination. In 1953, the General Assembly adopted a declaratory statement that, while a particular congregation enjoyed the beneficial use of its property, church property must not be used in violation of the obligation of the congregation to the PCUS. In 1965, a PCUS publication emphasized that "[t]he Church has refused to affirm that the property of a congregation belongs to that congregation absolutely and without any relation to the Church as a whole." In 1971, the General Assembly adopted a declaratory statement reaffirming its commitment to the 1953 statement, acknowledging that the civil laws of the State in which the property is situated

13

may be applicable, but stating its belief that "[g]enerally, however, the civil courts concluded that a congregation belonging to a religious denomination and subject to the constitution, faith, and doctrines thereof, cannot use its property for a purpose which violates the relationship of the congregation to the denomination."[2]

¶33.    When the PCUS was working to amend the Book of Church Order in the early 1980s to add the explicit term "trust" to its property chapter, the PCUS Stated Clerk sent a letter to all pastors and clerks of session.  He reaffirmed that the trust provision merely explicitly set forth the *traditional* position of the PCUS, and purported to "sharpen the point made in the 1971 statement."  He noted that the property amendments "are not related to the work of the Joint Committee on Presbyterian Reunion – they would have been written in the same language, and introduced at this time, if there were no reunion plans under consideration." He also reassured the recipients that the Plan for Reunion had a grandfather clause "under which PCUS churches would remain subject to *tranditional PCUS provisions* dealing with ownership, sale, and mortgaging of property in perpetuity." (Emphasis added.)   He noted that the amendments were "essential" due to the United States Supreme Court's decision in *Jones v. Wolf*, noting that "the action of the civil courts leaves us no choice except to amend our provisions for holding property[.]"

¶34.    *Jones v. Wolf* involved a dispute between majority and minority factions of a local

---

[2]Before the United States Supreme Court's 1979 *Jones v. Wolf* opinion, "courts normally resolved property disputes in hierarchical denominations simply by deferring to the decision of the general church's ecclesiastical authorities." *Presbytery of Greater Atlanta, Inc. v. Timberridge Presbyterian Church, Inc.*, 719 S.E.2d 446, 457-58 (Ga. 2011), *certiorari denied by* **Timberridge Presbyterian Church, Inc. v. Presbytery of Greater Atlanta, Inc.**, 567 U.S. 916, 132 S. Ct. 2772, 183 L. Ed. 2d 638 (2012).

PCUS church. *Jones v. Wolf*, 443 U.S. 595, 99 S. Ct. 3020, 61 L. Ed. 775 (1979). The Court noted that "the provisions of the constitution of the general church, the Book of Church Order, concerning the ownership and control of property failed to reveal any language of trust in favor of the general church." *Id.* at 601. "What has happened over the years since *Jones v. Wolf* is that many hierarchical denominations have added more explicit property provisions to their general and local church governing documents, as the Supreme Court said would be appropriate." *Presbytery of Greater Atlanta, Inc. v. Timberridge Presbyterian Church, Inc.*, 719 S.E.2d 446, 458 (Ga. 2011), *certiorari denied by Timberridge Presbyterian Church, Inc. v. Presbytery of Greater Atlanta, Inc.*, 567 U.S. 916, 132 S. Ct. 2772, 183 L. Ed. 2d 638 (2012). Thus, instead of silence on the issue in these documents, "we find provisions showing either that the general church does not control local church property, . . . or, as in this case and others, provisions showing that local church property is held in trust for the general church." *Id.* The PCUS's 1982 amendment was clearly a reaction to what the PCUS saw as a misinterpretation of its church law by the courts; it thus added the explicit trust provision in order to protect its interests in the civil courts. FPC participated in the process to pass the amendments[3] and was governed by them when approved in 1982, choosing not to leave the denomination.

¶35.    The 1982 PCUS trust provision, which governs FPC's property, provides that

> All property held by or for a particular church, whether legal title is lodged in
> a corporation, a trustee or trustees, or an unincorporated association, and

---

[3]FPC representatives did vote against the amendments, but after they were adopted, the church remained in the denomination, indicating its assent to be governed by the amendments despite initial disagreement.

whether the property is used in programs of the particular church or retained for the production of income, is held in trust nevertheless for the use and benefit of the Presbyterian Church in the United States.

The 1982 PCUS Book of Church Order also provides that

If a particular church is dissolved by the Presbytery, attempts by either majority or unanimous vote to withdraw from the Presbyterian Church in the United States or otherwise ceases to exist or function as a member of the Presbyterian Church in the United States, any property that it may have shall be within the control of the Presbytery and may be held for designated purposes or sold or disposed of in such manner as the Presbytery, in its discretion, may direct.

The 1982 PCUS Book of Church Order states that

The relationship to the Presbyterian Church in the United States of a particular church can be severed only by constitutional action on the part of the Presbytery . . . . If there is a schism within the membership of a particular church and the Presbytery is unable to effect a reconciliation or a division into separate churches within the Presbyterian Church of the United States . . . , the Presbytery shall determine if one of the factions is entitled to the property because it is identified by the Presbytery as the true church within the Presbyterian Church in the United States. . . .

The 1982 PCUS Book of Church Order clarifies that

Nothing in this chapter shall be construed to require a particular church to seek or obtain the consent or approval of any church court above the level of the particular church in order to buy, sell or mortgage the property of that particular church in the conduct of its affairs as a church of the PCUS.

¶36.    The PCUSA Book of Order contains a similar trust provision to that contained in the

1982 PCUS Book of Church Order:

All property held by or for a congregation, a presbytery, a synod, the General Assembly, or the Presbyterian Church (U.S.A.), whether legal title is lodged in a corporation, a trustee or trustees, or an unincorporated association, and whether the property is used in programs of a congregation or of a higher council or retained for the production of income, is held in trust nevertheless for the use and benefit of the Presbyterian Church (U.S.A.).

16

But, in contrast to the 1982 PCUS Book of Church Order, the PCUSA Book of Order further provides that

> A congregation shall not sell, mortgage, or otherwise encumber any of its real property and it shall not acquire real property subject to an encumbrance or condition without the written permission of the presbytery transmitted through the session of the congregation.

It also states that

> A congregation shall not lease its real property used for purposes of worship, or lease for more than five years any of its other real property, without the written permission of the presbytery transmitted through the session of the congregation.

¶37. The difference between the PCUS rules on property and the PCUSA rules on property is that congregations under the PCUS rules may exercise property rights without the approval of the denomination, while PCUSA rules forbid the congregation from buying, selling, leasing, or encumbering their property without denominational permission. Buying, selling, leasing, or encumbering the property is not at issue here. The longstanding tradition of *both* PCUS and PCUSA is that congregational property is held in trust for the denomination in the event of a congregational schism, dissolution, or situation in which the property is used in violation of the congregation's obligations to the denomination. PCUS was merely more hands-off about the beneficial use of property than is PCUSA, and that is what the opt-out provision accomplished: a church opting out of the property chapter did not have to obtain permission to buy, sell, or encumber property. While FPC opted out of the property provisions of the PCUSA Book of Order, "it plainly could not opt out of the property *trust* provision in Section G-8-0201, which mirrored the one in Section 6.3 of the PCUS Book of

17

Church Order." ***Presbytery of Greater Atlanta***, 719 S.E.2d at 455-56. Indeed, the opt-out provision specifically provided that in opting out of the PCUSA property provision, a church "shall hold title to its property and exercise its privileges of incorporation and property ownership under the provisions of the Constitution to which it was subject immediately prior to the establishment of the" PCUSA. That Constitution, according to FPC's own resolution to become a member of the PCUSA, was "the provisions of the Book of Church Order, Presbyterian Church in the United States (1982-1983 edition)[.]" The 1982-1983 PCUS Book of Church Order explicitly contained a trust provision in favor of the denomination. Moreover, FPC's "act of affiliating with the PCUSA . . . with the trust provision *already* in its governing constitution demonstrated that [FPC] assented to that relinquishment of its property rights – rights it then chose not to reassert by leaving the new national church during the next eight years" as it could have opted to do.[4] ***Id.*** at 456. The incorporation of FPC in 2003 further bolsters its assent to and membership in the PCUSA, with the application for incorporation noting that incorporation was being sought in compliance with the Constitution of the Presbyterian Church (U.S.A.).

¶38. Accordingly, PCUSA has a resulting trust interest in the property at issue. I would reverse the chancellor's order granting summary judgment in favor of FPC and remand the case for further proceedings.

      **KITCHENS, P.J., JOINS THIS OPINION.**

---

[4]The Reunion Articles of Agreement provided that any PCUS congregation had the right to seek dismissal from the new denomination while retaining title to its property. This right expired eight years after reunion. FPC did not avail itself of this provision, and remained a PCUSA member.