# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-01261-COA

**WILLIAM B. DEW**                                                           **APPELLANT**

**v.**

**P. SHAWN HARRIS**                                                           **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/21/2020 |
| TRIAL JUDGE: | HON. BRIAN KENNEDY BURNS |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | SIDNEY RAY HILL III |
| ATTORNEYS FOR APPELLEE: | J. DOUGLAS SMITH |
| | TIMOTHY D. MOORE |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE |
| DISPOSITION: | REVERSED AND REMANDED - 03/01/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., WESTBROOKS AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1.     A man sued his ex-wife's paramour for alienation of affection, and the trial court granted summary judgment. Finding a genuine issue of material fact exists regarding the plaintiff's claim, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

¶2.     William B. Dew and Rebecca Dew were married for over twenty years and have three children together. The couple divorced in October 2019.

¶3.     Several months later, Dew filed suit against P. Shawn Harris for the tort of alienation of affection. The complaint alleged Harris had been "carrying on a sexual relationship" with

Rebecca since before the Dews divorced. The complaint further asserted that the Dews had been in a loving marriage until Harris' conduct "caused [Rebecca's] affections for [her husband] to be alienated and for her to seek a divorce." The complaint referenced emails from 2017 in which Harris' ex-wife revealed to Dew that Harris was having an affair with Rebecca. Dew claimed that as a result of the affair, he "lost the love and affection" of his wife.

¶4.     Shortly after filing his answer, Harris moved for summary judgment. He argued there was "no causation between his wrongful conduct and the destruction of [Dew's] marriage" because the marriage was effectively "dead" by 2012.

¶5.     Harris attached supporting affidavits signed by Rebecca and each of her three children with Dew. Rebecca's affidavit stated in part, "My marriage was dead in 2012. I remained married to [Dew,] and we lived in the same home _**only**_ because of our children." She claimed that from then on "there was no affection nor was there any type of marital relationship of any kind." Rebecca recalled that "from 2012 on, neither of [them] told the other 'I love you,'" and the last time they had sex was in 2012. She also described financial problems that led to the deterioration of the marriage.

¶6.     Each Dew child signed an affidavit stating that as early as 2012 or 2014, their parents lived in separate bedrooms. Moreover, the children—ages fourteen, seventeen, and nineteen—did not "remember any occasion that [they] saw [their] parents kiss or have any physical contact that [they] believed was affectionate or loving in nature."

2

¶7.     When Harris moved for summary judgment, he also requested the trial court to suspend discovery until the motion could be heard.  The court agreed, and after briefing on the summary judgment matter, Dew sought permission to conduct additional discovery regarding the wrongful-conduct element of his claim.

¶8.     In opposition to the motion for summary judgment, and in stark contrast to the affidavits of his ex-wife and three children, Dew produced evidence that his marriage was healthy as recently as 2019.  First, Dew signed an affidavit stating his "marriage was not dead in 2012" but rather "quite the contrary."  He explained, "[M]y wife continued to show me love and affection throughout our marriage until May of 2019, when she told me that she wanted to go through with the divorce."  Dew then gave specific examples of "love and affection," stating he and his wife "had sexual intercourse . . . when [they] went on a cruise together in April of 2016 and then again during the first week of May of 2016."  He also supplied text messages in which he and Rebecca discussed whether they had sex on the cruise.

¶9.     In further support of his contention that there was still affection in the marriage, Dew presented emails from 2016 and 2017 where Rebecca told Dew she loved him.  These emails, as well as Dew's affidavit, showed the couple "attended counseling in an effort to save their marriage" in 2018—several years after Rebecca's affidavit said she thought the marriage was over.

¶10.    After Rebecca filed for divorce in 2018, Dew sent Rebecca an email stating, "Our God

is big and powerful. I trust Him to find a way for us and to Bless our marriage as His word says." Rebecca responded, "I agree, and if counseling works there is no need to do anything."

¶11. Finally, Dew also produced two affidavits from family friends. The friends swore that based on their personal interactions with the Dews, the couple appeared to be "loving and happy" as late as 2018. Dew also provided photographs of himself with Rebecca and their children in which they appeared to be a happy family.

¶12. Following the hearing, the trial court granted Harris' motion for summary judgment and further denied Dew's request for additional discovery. Dew appealed.

## STANDARD OF REVIEW

¶13. "We review the grant or denial of a motion for summary judgment de novo[.]" *Lefler v. Wasson*, 295 So. 3d 1007, 1009 (¶7) (Miss. Ct. App. 2020). "If, upon review of all pleadings, depositions, interrogatory answers, and admissions on file, there is no genuine issue of material fact, summary judgment in favor of the moving party is proper." *Alfonso v. Gulf Pub. Co.*, 87 So. 3d 1055, 1060 (¶15) (Miss. 2012); *see* MRCP 56(c). "All evidentiary matters must be viewed in the light most favorable to the nonmoving party." *Id*. "A grant of summary judgment will be upheld only when, viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Id*. (internal quotation marks omitted).

**DISCUSSION**

¶14. On appeal, Dew challenges the grant of summary judgment. Specifically, he argues "the trial court erred when it found that there were no issues of fact related to the causation element" of the alienation-of-affection claim. Dew also argues the trial court erred by not allowing him to conduct additional discovery.

¶15. "To establish a claim for alienation of affection, the plaintiff must prove (1) wrongful conduct of the defendant; (2) loss of affection or consortium; and (3) causal connection between such conduct and loss." *Fulkerson v. Odom*, 53 So. 3d 849, 851 (¶9) (Miss. Ct. App. 2011) (internal quotation mark omitted).

¶16. "Issues of fact sufficient to require a denial of a motion for summary judgment are obviously present where one party swears to one version of the matter in issue and another says the opposite." *Lancaster v. Miller*, 319 So. 3d 1174, 1181 (¶30) (Miss. Ct. App. 2021). "When doubt is present about whether any genuine issues of material fact exist, the trial court should deny the motion for summary judgment and permit a full trial." *Id*. at 1182 (¶30).

¶17. In seeking summary judgment, Harris argued Dew could never prove causation since his and Rebecca's marriage was "dead" at the time of the alleged affair. In support, Harris presented affidavits from Rebecca and her three children—all of whom claimed the couple showed no affection for each other beginning as far back as 2012.

¶18. Dew vigorously responded with several pieces of evidence to support his alienation claim. He first provided his own affidavit explaining that his wife continued to show him

5

love and affection until just months before their divorce in 2019. Dew also presented emails and text messages from 2016 to 2019 supporting this statement, including one on Valentine's Day when Rebecca wrote to her then-husband, "Happy valentines day love you too[.]"

¶19. In other emails, despite Harris' assertion that the marriage was effectively over in 2012, Rebecca told her husband she loved him on at least three occasions and exhibited a willingness to repair the marriage by attending counseling in 2018. She even wrote that "if counseling work[ed]," there would be no need to proceed with the divorce. Additionally, Dew provided affidavits from two family friends who described the Dews as a "loving and happy couple" as late as 2017 or 2018, as well as photos of the family appearing happy together during that time.

¶20. Ultimately, this case presents a classic split in testimony that warrants reversal of summary judgment. The family members' conflicting affidavits in this case are a textbook example of "one party swear[ing] to one version of the matter" and "another say[ing] the opposite." *Lancaster*, 319 So. 3d at 1181 (¶30); *see Alfonso*, 87 So. 3d at 1062 (¶23) (reversing an order granting summary judgment because a letter from a publishing company presented a genuine issue of material fact regarding an intentional-interference-with-contract claim). Dew claims he lost the love and affection of his wife because of Harris' affair with her, while Harris asserts the marriage had ended years before. This testimony underscores an issue of fact critical to Dew's case—whether the marriage was dead prior to Harris' alleged affair with Rebecca. Our precedent is clear that this determination, where there is

6

a split in testimony, is for a jury to resolve.[1]  *See id*.

¶21.    Considering the evidence in the light most favorable to the nonmovant, as we are required to do by our standard of review, Dew established a genuine issue of material fact regarding whether there was affection in his marriage and "a causal connection between such conduct and loss."  The proof Dew mustered showed the couple had sexual relations as late as 2016, and Rebecca told Dew she loved him as late as 2018—the year before they divorced.  Notably, that same year Rebecca sent an email expressing her hope that counseling could save the marriage.  Further, affidavits from friends close to the couple, as well as family photos, indicate the Dews were "loving and happy" during this time.  While the Dews' marriage may have been strained, as shown by the trip to counseling, it was a question for the fact-finder whether the marriage suffered the tortious conduct of alienation of affection.[2]

¶22.    When viewing the evidence in the light most favorable to Dew, there was proof the

---

[1] In its order granting summary judgment, the trial court put special emphasis on the affidavits of the children.  However, our Supreme Court "consistently holds that decisions as to the weight and credibility of a witness's statement are the proper province of the jury, not the judge."  *Watkins ex rel. Watkins v. Miss. Dep't of Hum. Servs.*, 132 So. 3d 1037, 1044 (¶22) (Miss. 2014).  The trial court ruled the kids' affidavits "weigh heavy as the children are 14, 17 and 19 . . . and they lived in the same household."

In contrast, the trial court viewed Dew's affidavit to be "based on his subjective belief, and it therefore holds no probative evidentiary value to the case, as it is mere opinion/speculation[.]"  A trial court is to refrain from such a credibility determination, as "[g]iving credence to one sworn statement over another is not appropriate at the summary judgment level."  *Id*. at 1044-45 (¶22).  Rather, at that stage, the evidence must be viewed in the light most favorable to the nonmoving party.

[2] *See Pierce v. Cook*, 992 So. 2d 612, 615-16 (¶¶3, 6, 18) (Miss. 2008) (explaining that alienation was a jury question even though a husband and wife had separated and the husband had moved to California before the alleged affair began).

marital tie remained intact long past the time Harris asserted. As a result, we reverse and remand for further proceedings. Because we find a genuine issue of material fact precludes summary judgment, we decline to address Dew's alternative argument that he should have been allowed additional discovery.

## CONCLUSION

¶23. The conflicting affidavits and other evidence in this case create a genuine issue of material fact as to whether the Dews' marriage was "dead" prior to Harris' alleged affair with Rebecca—a matter that goes directly to the causation element of Dew's alienation-of-affection claim. Given our standard of review, the existence of this genuine issue of material fact precludes summary judgment. Therefore, the trial court's judgment is reversed, and the case is remanded for further proceedings.

¶24. **REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR.**