RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:
 

 ¶ 1. First Presbyterian Church PCUSA of Starkville, Mississippi, ("FPC") filed its complaint for declaratory judgment, a temporary restraining order, and a preliminary injunction in the Chancery Court of Oktibbeha County requesting legal protection and injunctive relief against the Presbytery of St. Andrew Presbyterian Church U.S.A., Inc. ("Presbytery"), after the Presbytery claimed FPC's property was held in trust for the Presbyterian Church in the United States of America ("PCUSA"). The chancery court granted summary judgment in favor of FPC, finding no evidence of any trust, express or implied. We affirm the finding of the chancery court.
 

 STATEMENT OF THE FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. FPC has occupied the same piece of land in central Starkville for more than 160 years, as it was founded in 1821 as a Congregational Church and mission to the Western Frontier. FPC holds title to six parcels of real property in Starkville-the most significant being the main church facility. FPC acquired the main church property in 1837, through a deed of conveyance to the "Trustees for the Presbyterian Church in the Town of Starkville." In 1924 FPC constructed its current sanctuary on the property.
 

 ¶ 3. FPC has transitioned into and out of multiple Presbyterian denominations, including the Old School Presbyterian Church; the Presbyterian Church, Confederate States of America; and the Presbyterian Church in the United States ("PCUS"). In 1983, the PCUS merged with another Presbyterian denomination to create the Presbyterian Church in the United States of America ("PCUSA"). FPC has been affiliated with the PCUSA since its inception.
 

 ¶ 4. FPC claimed that, although it was affiliated with several different Presbyterian denominations, it existed as an "independent, unincorporated religious association from its founding until 2003." On June 22, 2003, FPC's governing board (its session) passed a resolution declaring that "it is in the best interest of this association that it be forthwith incorporated as a nonprofit corporation." The resolution was approved by the congregation, and FPC has remained an incorporated entity (First Presbyterian Church PCUSA of Starkville, Mississippi) since that date.
 

 ¶ 5. Following its incorporation, FPC conveyed to the corporation its main property and facility in Starkville. The titleholder of record was then identified as FPC's corporate entity. Any property duly transferred to the corporation remains held by and titled in the name of First Presbyterian Church, Starkville, Mississippi.
 

 ¶ 6. Prior to 1982, no official documents of the PCUS included trust language. Moreover, in 1953, PCUS adopted an official position unambiguously disclaiming any trust interest in property and confirming that the beneficial interest in the property remained with the congregation. In 1982, PCUS amended its constitution to include the word "trust." Further, a reservation provision was included with the adoption of the trust clause, which allowed a local church not to be required to seek or obtain consent or approval of any other entity to buy, sell, or mortgage the church's property as a church of the PCUS.
 

 ¶ 7. After the PCUSA was formed, the Book of Order contained a trust clause, and local churches then were required to "obtain permission before selling, mortgaging, or otherwise encumbering the property of that particular church." Because this new trust clause was a departure from prior practice, the PCUSA's constitution allowed for a "property exception" which provided as follows:
 

 The provisions of this chapter shall apply to all congregations of the Presbyterian Church (U.S.A.). Except that any congregation which was not subject to a similar provision of the constitution of the church of which it was a part, prior to the reunion of the Presbyterian Church in the United States [PCUS] and the United Presbyterian Church in the United States of America [UPC] to form the Presbyterian Church (U.S.A.) [PC(USA) ], shall be excused from the provision of this chapter if the congregation, within a period of eight years following the establishment of the Presbyterian Church (U.S.A.), vote to be exempt from such provision in a regularly called meeting and shall thereafter notify the Presbytery of which it is a constituent church of such vote. The particular church voting to be so exempt shall hold title to its property and exercise its privileges of incorporation and property ownership under the provisions of the Constitution to which it was subject immediately prior to the establishment of the Presbyterian Church (U.S.A.)[PC(USA) ]. This paragraph may not be amended.
 

 ¶ 8. In response to this "opt out" clause and a session meeting with a representative
 of the presbytery, FPC voted to exempt itself by passing a resolution voting to opt out of the trust clause. The resolution read that FPC
 

 does hereby vote to be exempt from the provisions of Chapter VIII of the Book of Order to which it was not subject prior to the Reunion which established PCUSA and
 
 will hold title to its property
 
 and exercise its privileges of incorporation under the Book of Church Order, PCUS (1982-1983 edition).
 

 (Emphasis added.) FPC maintained this same position for the next few years, as evinced by session minutes from a June 1989 meeting.
 

 Elder James Long brought it to the attention of the Session that he had talked with David Snellgrove at Presbytery regarding the property question and determined that in 1984 we passed a resolution at a Congregational Meeting to remain under the Old Book of Church Order. In the beginning of 1990 Presbytery will publish a list of churches who opted to remain under the Old Book of Church Order. Elder Long further stated at the time of the resolution that the Transition Commission met and acted on the resolution. Elder Long has requested a copy of the minutes of this Commission which our name appears. At the present time there are three situations which could exist under the Old Book of Church Order.
 

 1. If there was a split in the congregation, the Presbytery would decide which half would get the property.
 

 2. If our church is dissolved then Presbytery gets the property.
 

 3. If we pull out of the Presbyterian Church, we get our property.
 

 These are the three scenarios we are operating under. Rev. Parsons stated that he had re-submitted the request so as to cover this church in the eventuality that no action was taken earlier.
 

 ¶ 9. When incorporating in 2003, and subsequently adopting bylaws, FPC placed in those bylaws a reaffirmation of its intent to be exempt. In 2005 Session minutes, FPC reported that it had submitted the following to the chief officer of the Presbytery:
 

 The Church By Laws were introduced and it was related that the bylaws will follow the Book of Church Order
 
 with the exception of retaining ownership of church property in the event the church dissolves. The property will not become property of the Presbytery
 
 .
 

 (Emphasis added.)
 

 ¶ 10. The Presbytery is a council of the church and a governance level. In Presbyterian governance, the Presbytery is the central governing unit. Under the governing constitution of the PCUSA, the local presbytery is responsible for waiving or seeking enforcement of any property claims of the denomination against the local church.
 

 ¶ 11. Due to increasing disagreement with the PCUSA, FPC voted to cease monetary contributions to the Presbytery and look at the possibility of joining another Presbyterian denomination. In response to schism in the membership of FPC, the Presbytery notified FPC that it had appointed a Presbytery committee, called an Administrative Commission, to "inquire into and settle difficulties" at FPC. The Administrative Commission was authorized to fire the pastor, substitute itself for FPC's elected leadership, and take over FPC's property.
 

 ¶ 12. On March 22, 2015, FPC's session passed a resolution authorizing the filing of a legal action to determine the property rights of FPC, the Presbytery, and the PCUSA. FPC sought a declaratory judgment
 recognizing FPC's exclusive ownership of all property held by it or in its name, free of any trust claimed by the PCUSA. FPC also requested a temporary restraining order prohibiting the Presbytery from taking control or possession of FPC's property or from interfering with FPC's property ownership.
 

 ¶ 13. In response, the Presbytery argued that the historic polity of the Presbyterian Church holds that when a congregation is in schism, as the Presbytery contends is the case at FPC, its presbytery determines which faction receives the property, based on which faction is loyal to its denomination of membership. The Presbytery contended that the Administrative Commission's goal was to effect reconciliation of the church's members and to hold the congregation together. According to the Presbytery, the Complaint was filed by "one faction in the schism, who currently have a majority vote of the session and believe that they have a majority of membership on their side."
 

 ¶ 14. The Presbytery asserted a counterclaim for declaratory relief that FPC is subject to PCUSA's Constitution, governance, and dispute-resolution procedures, resulting in dismissal of the case or holding the case in abeyance indefinitely pending review by PCUSA. In the alternative, PCUSA asked the court to declare that the subject property was held in trust for the use and benefit of the Presbytery of St. Andrew. The Presbytery also sought injunctive relief, enjoining FPC from encumbering, selling, divesting, or otherwise transferring any property until such time as the Presbytery makes a determination of the issues related to FPC.
 

 ¶ 15. On May 11, 2015, after a hearing, the Oktibbeha County Chancery Court entered a Preliminary Injunction for all property held by FPC against the Presbytery, enjoining the Presbytery from taking any action affecting the property rights of FPC. The Presbytery also was enjoined from asserting a trust over FPC's property.
 

 ¶ 16. The parties filed competing motions for summary judgment and presented argument to the chancellor. FPC argued that the only disputed issue was whether FPC owns its property, while the Presbytery argued two issues-(1) does the Presbytery have a trust interest in FPC's property, and (2) does the First Amendment permit entry of an injunction barring PCUSA from exercising its ecclesiastical authority. After the hearing, the chancellor granted FPC's motion. The chancellor stated the issue to be determined as "who is entitled to or controls the real property occupied by FPC." Specifically, the chancellor was tasked with determining the relationship between the local church (FPC) and the parent church (PCUSA) and whether that relationship gave rise to a trust property interest in PCUSA to FPC's property. While the Presbytery argued that it considered FPC's property to be held in trust for the PCUSA, FPC argued that its past affiliation with PCUSA did not entail a trust-clause provision.
 

 ¶ 17. The chancellor determined that it was undisputed that FPC had obtained the deeds of conveyance and paid all consideration for titles to the various properties at issue. The chancellor ascertained that no trust provisions existed in any of those deeds. He also determined that no express trust agreements existed outside the deeds between the parties. The chancellor found no evidence that there was any intention to create a trust relationship. "There are no documents presented whereby resolutions were properly passed or votes were taken to establish a written express trust or of any indication whatsoever, that there was
 any mention of even an oral express trust." The chancellor concluded that:
 

 there was and is no traditional express trust applicable herein in the documents of title, nor any legally enforceable and separate traditional trust instrument that would operate to vest a beneficial interest in and over the legally titled property of FPC to PCUSA.
 

 The chancellor also found there was no constructive trust as implied by law based on the facts as agreed upon by the parties. Based on the evidence presented, the chancellor concluded that FPC clearly intended to hold title to its property.
 

 ISSUES
 

 ¶ 18. On appeal, the Presbytery raises the following two issues:
 

 I. Whether the chancery court erred as a matter of law in determining the Presbytery did not have a trust interest in the real and personal property of FPC.
 

 II. Whether entry of the preliminary injunction violated its rights under the First Amendment to the United States Constitution by barring the Presbytery from exercising jurisdiction over a member congregation of its denomination and, further, from disciplining its members and ministers from violating church doctrine.
 
 [1]
 

 STANDARD OF REVIEW
 

 ¶ 19. This Court applies a de novo standard of review to a chancellor's grant of summary judgment.
 
 Alfonso v. Gulf Publ'g Co.
 
 ,
 
 87 So.3d 1055
 
 , 1060 (Miss. 2012). If, upon review of all pleadings, depositions, interrogatory answers, and admissions on file, there is no genuine issue of material fact, summary judgment in favor of the moving party is proper. M.R.C.P. 56(c). All evidentiary matters must be viewed in the light most favorable to the nonmoving party.
 
 Evan Johnson & Sons Constr., Inc. v. State
 
 ,
 
 877 So.2d 360
 
 , 364 (Miss. 2004).
 

 ANALYSIS
 

 Whether the chancery court erred as a matter of law in determining the Presbytery did not have a trust interest in the real and personal property of FPC.
 

 ¶ 20. Mississippi has adopted the "neutral principles of law" approach for resolving church property disputes.
 
 See
 

 Schmidt v. Catholic Diocese of Biloxi
 
 ,
 
 18 So.3d 814
 
 , 824 (Miss. 2009) ;
 
 Church of God Pentecostal, Inc. v. Freewill Pentecostal Church of God, Inc.
 
 ,
 
 716 So.2d 200
 
 , 206 (Miss. 1998).
 

 The neutral-principles approach "relies on objective, traditional concepts of trust and property law...."
 

 Id.
 

 at 205
 
 . "It calls 'for the completely secular examination of deeds to the church property, state statutes and existing local and general church constitutions, by-laws, canons, Books of Discipline and the like....' "
 

 Id.
 

 (quoting
 
 Protestant Episcopal Church in Diocese of N.J. v. Graves
 
 ,
 
 83 N.J. 572
 
 ,
 
 417 A.2d 19
 
 , 23 (N.J. 1980),
 
 cert. denied sub nom.
 

 Moore v. Protestant Episcopal Church in Diocese of N.J.
 
 ,
 
 449 U.S. 1131
 
 ,
 
 101 S.Ct. 954
 
 ,
 
 67 L.Ed.2d 119
 
 (1981) ). Religious documents must be carefully scrutinized in purely secular terms without relying on religious precepts.
 
 Church of God Pentecostal
 
 ,
 
 716 So.2d at
 
 205-06 (citing [
 
 Jones v.
 
 ]
 
 Wolf
 
 , 443 U.S. [595,] 604,
 
 99 S. Ct. 3020
 
 , [
 
 61 L.Ed.2d 775
 
 (1979) ] ). If a deed, corporate charter, or religious document incorporates religious concepts in
 its provisions concerning ownership of the property, the court must defer to the authority of the ecclesiastical body so as to avoid resolving any religious controversy.
 
 Wolf
 
 , 443 U.S. at 604,
 
 99 S.Ct. 3020
 
 (citing
 
 Serbian Eastern Orthodox Diocese
 
 [
 
 v. Milivojevich
 
 ], 426 U.S. [696,] 709,
 
 96 S.Ct. 2372
 
 , [
 
 49 L.Ed. 2d 151
 
 (1976) ] ).
 

 Schmidt
 
 ,
 
 18 So.3d at 824
 
 .
 

 ¶ 21. As the chancellor held, the underlying reason for the schism among FPC members and between FPC and the Presbytery is not the issue before this Court. The only issue to be decided is whether PCUSA ever had a trust interest in FPC's property. We find that the chancellor properly found that it did not.
 

 ¶ 22. FPC argues that no trust exists, whether express or implied, constructive or resulting. FPC relies on the "opt out" provision and other documents to support its position that no trust was ever created. The Presbytery argues the FPC agreed to be bound by PCUS's inclusionary trust amendment and that FPC's continued allegiance to the higher church through the adoption of the Constitution and Book of Order, and acceptance of the benefits of its affiliation supports the enforceability of the trust interest.
 

 ¶ 23. Generally, trusts are classified under two broad categories: (1) express trusts and (2) implied trusts. Mississippi law requires that "no trust of or in any real property can be created except by written instrument signed by the party who declares or creates such trust...."
 
 Miss. Code Ann. § 91-8-407
 
 (Rev. 2013). Neither party asserted the existence of any writing signed by the proper FPC officials after authorization that satisfies Section 91-8-407, whether by original deed or separate trust instrument. Likewise, no declaration of trust is filed in the land records of Oktibbeha County, Mississippi, as provided by Section 91-8-407(b)(2).
 

 ¶ 24. No express trusts were entered into by the parties under traditional Mississippi trust law. No reference exists in any deed to creation of a trust relationship. It follows that no clear expression of an intent to create a trust exists, nor any reference even to the term "trust." Neither party has asserted the opposite. Likewise, no separate document such as a trust instrument exists in writing. Again, neither party asserts the contrary.
 

 ¶ 25. None of the elements of creation of an express trust are present, such as the writing, the clear intent of the trustor, or the confirming authority of creation of a trust and the transfer of property by the governing body.
 
 See
 

 Church of God Pentecostal
 
 ,
 
 716 So.2d at 208
 
 . Therefore, no traditional express trust nor any legally enforceable and separate traditional trust instrument exists or existed that would operate to vest a beneficial interest in and over the legally titled property of FPC to PCUSA.
 

 ¶ 26. While an express trust must be written, implied trusts differ in that they arise by implication of the law or are presumed from the circumstances. Mississippi recognizes two types of implied trusts: (1) constructive trusts and (2) resulting trusts.
 

 ¶ 27. A constructive trust is a judicially imposed remedy used to prevent unjust enrichment when one party wrongfully retains title to property.
 
 McNeil v. Hester
 
 ,
 
 753 So.2d 1057
 
 , 1064 (Miss. 2000). FPC purchased the property at issue. No evidence exists that PCUSA invested any funds into the acquisition of any of the parcels of land. No evidence of any documents, oral conversations, minutes, or other written or oral supporting evidence exists that any arrangement of trust was
 contemplated in the tradition of a constructive trust. No constructive trust is implied by law based on the facts as agreed upon by the parties.
 

 ¶ 28. A resulting trust "is designed to give effect to the unwritten but actual intention of the parties at the time of the acquisition of title to the affected property." Robert E. Williford,
 
 Trusts
 
 , 8 Encyclopedia of Mississippi Law § 73:2, 422 (2001). Additionally, Section 91-8-407(a)(2) specifically requires the intention to create a trust. When FPC incorporated in 2003, no intention to create a trust or create an express trust relationship existed. Furthermore, it is clear that PCUS disclaimed any interest in church trust property until just before the merger forming PCUSA. Although a trust provision was placed in the constitution when PCUSA was formed, the local churches were granted the right to opt out of that provision. FPC took measures on several different occasions to exercise its right to opt out. It did so in session meetings and bylaws of incorporation; it did so with reassurances by officers of PCUSA that compliance with the opt-out would allow FPC to hold title to its property. It is reasonable to conclude the consistent position of FPC as representative of its intent that FPC wanted to remain, as it always had, the owner of its property. There is no evidence of a resulting trust.
 

 CONCLUSION
 

 ¶ 29. Today's case does not present a doctrinal dispute, and this Court is authorized to exercise jurisdiction under neutral principles of law. The continued affiliation of FPC with PCUSA since the merger was based on FPC's belief that it had availed itself of the eight-year-opt-out provision given it by PCUSA. FPC's provision that it "will hold title to its property" is clear evidence of its intent. We find that no express or implied trust existed between the parties.
 

 ¶ 30.
 
 AFFIRMED.
 

 WALLER, C.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J.
 

 This argument is now moot, for FPC is no longer a member of the PCUSA.