# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-CA-01007-SCT

*KEVIN BEACHY, EDDIE KINSEY, ANDRE MULET, AND KRIS WILLIAMS*

*v.*

*MISSISSIPPI DISTRICT COUNCIL FOR ASSEMBLIES OF GOD*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/23/2021 |
| TRIAL JUDGE: | HON. JAMES B. PERSONS |
| TRIAL COURT ATTORNEYS: | AMBER LYNN KIPFMILLER |
| | LISA ANDERSON REPPETO |
| | ANDREW SCOTT HARRIS |
| | SABRINA BOSARGE RUFFIN |
| | MALCOLM  F. JONES |
| COURT FROM WHICH APPEALED: | CHANCERY COURT OF THE FIRST JUDICIAL DISTRICT OF HARRISON COUNTY |
| ATTORNEY FOR APPELLANTS: | MALCOLM F. JONES |
| ATTORNEY FOR APPELLEE: | LISA ANDERSON REPPETO |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 08/24/2023 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**KITCHENS, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     The General Council of the Assemblies of God (General Council) governs the Assemblies of God denomination. Its affiliate, the Mississippi District Council for Assemblies of God (District), governs the denomination's local churches in Mississippi, including Gulf Coast Worship Center (GCWC) in Long Beach.

¶2.     In January 2017, Kevin Beachy, the pastor of GCWC, did not renew his credentials

as an ordained pastor with the General Council. Various meetings and communications were had between Beachy and the District concerning the nonrenewal of his credentials as required by the General Council and District constitutions and bylaws. On March 15, 2017, Beachy informed the District that he and GCWC intended to disaffiliate from the General Council. The following day, March 16, 2017, the District informed Beachy that GCWC was being placed under District supervision. Then, on March 19, 2017, the GCWC congregation voted to disaffiliate from the General Council. The congregation voted also to remove a reverter clause from its constitution and bylaws. This clause would have caused the GCWC's property to revert to the District in the event that GCWC ceased operating as a "church body."

¶3. On November 28, 2017, the District filed a chancery court petition for declaratory judgment and injunctive relief against Kevin Beachy and the GCWC board of trustees, Eddie Kinsey, Andre Mulet, and Kris Williams (collectively, Defendants). Both the District and Defendants filed motions for summary judgment. The trial court granted the District's motion for summary judgment and denied Defendants' motion. Defendants filed a timely appeal.

## STATEMENT OF THE FACTS

¶4. On November 7, 1988, the GCWC congregation voted for their local church to become a member of the Assemblies of God denomination. A quorum of the congregation agreed to accept the tenets of faith of the Assemblies of God, agreed to be governed by and to accept the constitution and bylaws of the General and District Council, and they agreed

2

to have GCWC's property deeded to the Assemblies of God, the trustees of the local Assemblies of God church, and their successors in office.[1] After the meeting on November 7, 1988, a GCWC trustee assured the District that the deed was worded as specified by the General Council. On November 28, 1988, GCWC filed its formal application for affiliation with the General Council. In its application, GCWC stated that it was applying with the "purpose of cooperating with other Assemblies of like precious faith and assuming the responsibilities incidental thereto, as set forth in the Constitution and Bylaws of the General Council, and the Constitution and Bylaws of the [District]." On December 2, 1988, the General Council identified GCWC as a General Council affiliated local assembly.

¶5.    GCWC remained affiliated with the General Council and Assemblies of God church without disagreement until 2017. In January 2017, Beachy, the pastor of GCWC, did not renew his credentials as an ordained minister of the Assemblies of God church as mandated by the General Council. When a District representative contacted him about the nonrenewal of his credentials, Beachy informed the representative that he did not intend to renew his credentials as an ordained minister under the General Council. As a result, the District placed Beachy under investigation for his failure to renew his credentials.

¶6.    After several failed attempts to reconcile, Beachy told the District that GCWC

---

[1]The District's constitution provides that "[a]ll church properties shall be deeded according to the sample deeds in the District Council Bylaws or comparable thereto." The District's bylaws provide that "[a]ll property of the assembly shall be deeded to the assembly and held in its name."

intended to disaffiliate from the Assemblies of God church. On March 16, 2017, the District informed him that GCWC had been reclassified as a "District Supervised assembly" due to the pastor's failure to renew his credentials with the church, which violated the General Council's constitution, article XI, section 1a(6). The District explained also that if members of GCWC intended to disaffiliate, both the General Council's and District's constitution and bylaws required that representatives of the church be given an opportunity to address the GCWC congregation about remaining affiliated with the Assemblies of God church. No such meeting ever was held.

¶7.    On March 19, 2017, the GCWC congregation, with Beachy functioning as its pastor, voted to disaffiliate from the General Council and Assemblies of God church. The congregation voted also to amend its constitution and bylaws to remove a provision that called for GCWC's property to revert to the District "if the assembly cease[d] to function as a church body[.]"

¶8.    On November 28, 2017, the District filed in chancery court a petition for declaratory judgment and injunctive relief against Defendants. The District requested that the trial court declare that the actions taken by the GCWC's congregation at its meeting March 19, 2017, were void; that GCWC had been under District supervision since March 16, 2017; and that all GCWC personal property, real property, and improvements were under the District's control. The District requested also injunctive relief to allow it to assume control of GCWC and to install an interim pastor.

4

¶9. Defendants filed a motion to dismiss. They argued that the trial court lacked jurisdiction because the issues of this case were purely ecclesiastical. The District argued that "ecclesiastical abstention require[d] that [the] [c]ourt grant the relief sought" because "the District's decisions to classify [GCWC] as a District Supervised assembly and to remove and replace Beachy as pastor are ecclesiastical in nature" and the case involves control of property. Regarding property, the District argued that GCWC adopted the constitution and bylaws of the General Council, which "acknowledge the affiliation with the General Council and acknowledge that all property [was] held in trust for the benefit of the District and the General Council." Additionally, the District argued that the church's bylaws contained a reverter clause, which provided that "in the event that the assembly ceases to function as a church body, the said property, real or chattel, shall revert to [District]." The trial judge denied the motion to dismiss, determining that

> The General Council of the Assemblies of God and the District, of which GCWC is a member, is a hierarchal church fellowship and as such the court may not interfere in the District's action in placing GCWC under District Supervision or in considering the actions of GCWC at the March 19, 2017 meeting to be void. The District's decisions are those of a higher authority within the church's hierarchal system and are protected by the law of judicial abstention as ecclesiastical disputes.

¶10. The District moved to amend its petition, which was granted on November 18, 2019. In its amended petition, the District sought the trial court's declaration that: (1) the actions taken at the March 19, 2017, meeting were void; (2) GCWC had been under the District's supervision since March 16, 2017; and (3) GCWC's property, real and personal, including

5

improvements, "were intended to be held in trust and are under the control of the District Council."

¶11.    On May 15, 2020, the District filed a motion for summary judgment, contending that (1) it had authority to govern GCWC, the GCWC had been under District supervision since March 16, 2017, thereby making the votes taken on March 19, 2017, null and void; (2) GCWC's property was held in trust for the District; and (3) the District was entitled to injunctive relief. In response, Defendants asserted that they had authority to hold a business meeting on March 19, 2017, and vote to disaffiliate from the Assemblies of God church. They asserted also that the GCWC property was not subject to a trust in favor of the District or the General Council. Defendants disputed the factual statements in the District's affidavits. They argued that GCWC's decision to affiliate with the General Council did not mean that it became part of a hierarchical church; that the GCWC never ceased operating as a church body; that the GCWC was unlawfully placed under District supervision; that neither the deeds nor the articles of incorporation of the GCWC refer to the District or the General Council; and that the ecclesiastical abstention doctrine bars the trial court from exercising jurisdiction over governance issues within the church.

¶12.    On the same day the District filed its motion for summary judgment, Defendants filed a motion to dismiss and for summary judgment. Defendants argued:  (1) GCWC's deed did not mention the District or General Council nor had the church ceased being a "church body," so the property does not belong to the District; (2) the District failed to join GCWC,

6

Whitney Bank d/b/a Hancock Bank, and the General Council as necessary parties to the suit; (3) the statute of limitations prohibited the District's trust claims; (4) the statute of frauds prohibited the court from finding an express trust existed; and (5) merger and parole evidence rules prohibited the consideration of verbal representations. In response to Defendants' motion, the District argued that its trust claims were not barred by the statute of limitations. But the District argued also that it "does not claim an express trust and, therefore, the statute of frauds, parole evidence and merger are irrelevant."[2] The District attached the affidavit of Bob Wilburn, the current superintendent of the District, who stated that the purpose of the suit was to preserve GCWC as an Assembly of God church and to safeguard the property.

¶13.    On July 23, 2021, the trial court entered its final judgment, granting the District's motion for summary judgment and denying Defendants' motion for summary judgment and motion to dismiss.[3] The chancellor determined that the "ultimate issue" was the continued affiliation between GCWC and the General Council/District following the actions taken at the March 19, 2017, meeting. In his order, the chancellor reasoned that

> the defendants, as well as the congregation, had no authority to take any action, including that taken at the March 19, 2017[,] meeting as discussed hereafter.

---

[2]But the District argued that a resulting trust existed.

[3]The chancellor's order granting the District's motion for summary judgment stated that
> (i) the meeting held by the pastor and board of GCWC on March 19, 2017[,] and the actions taken at said meeting are void; (2) GCWC has been under District supervision since March 16, 2017; and (iii) all GCWC personal property, real property, and improvements are under the control of the District Council."

7

> . . . [T]he Assemblies of God Church is a hierarchal church, the validity of actions taken at the March 19, 2017[,] GCWC meeting are governed by and subject to the Constitution and bylaws of the General Council, the District and the Constitution and bylaws of GCWC itself.

The trial court also determined that the real and personal property, as well as any improvements made by GCWC were under the control of the District.

¶14. In denying Defendants' motion to dismiss and motion for summary judgment, the trial court explained that the District was not seeking ownership of the real and personal property of GCWC. Rather, the District was only seeking "control for the express purpose of installing an interim pastor." Because of this, the court explained, Hancock/Whitney Bank and GCWC were not necessary parties to the action at issue. The trial court also determined that the General Council was not a necessary party to this action, based on the bylaws and constitution. The trial court explained, "[b]ecause title to GCWC property, as opposed to control, is not an issue, the motion to dismiss based on the statute of frauds, the statute of limitations, and merger and parol evidence is denied."

¶15. On July 30, 2021, Defendants filed a motion to alter or reconsider the orders granting summary judgment in favor of the District and denying Defendants' motions to dismiss and for summary judgment. The trial court denied that motion on August 10, 2021.

¶16. Defendants timely appealed. On appeal, Defendants raise a number of issues: (1) the trial court erred by granting the District's summary judgment, and the grant of summary judgment violated the ecclesiastical abstention doctrine; (2) the trial court erred by failing to join Hancock/Whitney Bank, GCWC, and the General Council as real parties in interest; (3)

8

the trial court erred by failing to dismiss the District's claims of an express or equitable trust, breach of a written agreement, or breach of an unwritten agreement as barred by the statute of limitations; (4) the trial court erred by failing to dismiss the District's claims of an express trust due to a violation of the statute of frauds and the formal requirements of Mississippi Code Sections 91-8-401 and -402 (Rev. 2021); (5) the trial court erred by allowing representations made by members of GCWC to be considered in violation of the doctrine of merger for deed and parole evidence; (6) the trial court erred by finding that GCWC ceased operating as a church body; (7) the trial court erred by finding that GCWC did not have authority to amend its bylaws to remove the ownership provision that would transfer property to the District; and (8) the trial court erred when it granted the District's motion to strike GCWC chain-of-title summary, and it erred by failing to strike all or portions of the affidavits included in the District's motion for summary judgment.

## STANDARD OF REVIEW

¶17.    This court reviews a grant of summary judgment *de novo*. ***Builders & Contractors Ass'n of Miss. v. Laser Line Constr. Co.***, 220 So. 3d 964, 965 (Miss. 2017) (quoting ***U.S. Fid. & Guar. Co. v. Martin***, 998 So. 2d 956, 962 (Miss. 2008)). "The evidence must be viewed in the light most favorable to the non-moving party." ***Watson Quality Ford, Inc. v. Casanova***, 999 So. 2d 830, 833 (Miss. 2008) (citing ***Est. of Johnson v. Chatelain ex rel. Chatelain***, 943 So. 2d 684, 686 (Miss. 2006)). "Summary judgment is proper when the "'pleadings, depositions, answers to interrogatories and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"'" *Maness v. K & A Enters. of Miss., LLC*, 250 So. 3d 402, 409 (Miss. 2018) (quoting *Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 88 (Miss. 2013)).

## DISCUSSION

I.  **The ecclesiastical abstention doctrine applies and prevents the chancellor from addressing GCWC's disaffiliation from the Assemblies of God church.**

¶18. On appeal, Defendants argue that the chancellor "should have abstained from addressing the purely ecclesiastical issues concerning the congregation's decision concerning disaffiliation and the selection of their pastor and [t]rustees." We agree.

¶19. In *Catholic Diocese of Jackson v. De Lange*, this Court recognized that

> The First Amendment of the United States Constitution provides that "Congress shall makes no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. Interpreting the First Amendment, the United States Supreme Court then recognized the ecclesiastical abstention doctrine in *Watson v. Jones*, 80 U.S. 679, 13 Wall. 679, 20 L. Ed. 666 (1872). *See Roman Cath. Diocese of Jackson v. Morrison*, 905 So. 2d 1213, 1235-36 (Miss. 2005) (noting that *Watson* is the origin of the ecclesiastical abstention doctrine). The Supreme Court later held that the Fourteenth Amendment of the United States Constitution applied this principle to the states. *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 166, 73 S. Ct. 1443, 97 L. Ed. 120 (1952); *see also*, *Morrison*, 905 So. 2d at 1236 (noting that "[t]his doctrine [was] later found to be a constitutional imperative in *Kedroff*[.]"). This doctrine requires that
>
> > For where resolution of the disputes cannot be made without extensive inquiry by civil courts into religious law and polity, the First and Fourteenth Amendments mandate that civil courts shall not disturb the decisions of the highest ecclesiastical

10

> tribunal within a church of hierarchical polity, but must accept such decisions as binding on them, in their application to the religious issues of doctrine or polity before them.

*Serbian Eastern Orthodox Diocese for U.S. and Can. v. Milivojevich*, 426 U.S. 696, 709, 96 S. Ct. 2372, 49 L. Ed. 2d 151 (1976).

*Catholic Diocese of Jackson v. De Lange*, 341 So. 3d 887, 892 (Miss. 2022). "The ecclesiastical abstention doctrine recognizes that the Establishment Clause of the First Amendment precludes judicial review of claims that require resolution of 'strictly and purely ecclesiastical' questions." *McRaney v. N. Am. Mission Bd. of S. Baptist Convention, Inc.*, 966 F.3d 346, 348 (5th Cir. 2020) (quoting *Milivojevich*, 426 U.S. at 713). "'[M]atters of church government, as well as those of faith and doctrine' constitute purely ecclesiastical questions." *Id.* (alteration in original) (quoting *Kedroff*, 344 U.S. at 116).

¶20. The chancellor determined that the "ultimate issue" here was the continued affiliation between GCWC and the General Council/District after the actions taken at the March 19, 2017, meeting. But this Court has held that "[t]he alteration of a parish is, in fact, a matter of internal church government, which lies at the core of ecclesiastical affairs." *Schmidt v. Catholic Diocese of Biloxi*, 18 So. 3d 814, 822 (Miss. 2009) (citing *Milivojevich*, 426 U.S. at 721). Making a judicial determination of whether GCWC is to remain a member of the General Council and under its control intrudes into the affairs of church government. Thus, we find that it was error for the chancellor to undertake the adjudication of this internal church matter and his determination that the actions taken by Defendants during the congregational meeting on March 19, 2017, are void. The chancellor was without jurisdiction

11

to address the disaffiliation matter as it was and is predominately ecclesiastical in nature.[4]

> **II.** **Notwithstanding the ecclesiastical abstention doctrine, there is a genuine issue of material fact regarding ownership of the property. Therefore, the chancellor erred by granting the District's motion for summary judgment.**

¶21. We have recognized that courts can address church property disputes, notwithstanding the ecclesiastical abstention doctrine. *See Mt. Helm Baptist Church v. Jones*, 79 Miss. 488, 30 So. 714, 716 (1901) ("But the property rights of all churches are within the protection of this court, as are the property rights of citizens of every class."); *see also Sawyer v. Brandon*, 825 So. 2d 26, 32-33 (Miss. 2002); *Schmidt*, 18 So. 3d at 823-24. We have explained "this Court's authority in adjudicating church property disputes" as follows:

> Civil courts have the general authority to resolve the question of church property ownership. *Jones v. Wolf*, 443 U.S. 595, 602, 99 S. Ct. 3020, 61 L. Ed. 2d 775 (1979). "The State has an obvious and legitimate interest in the

---

[4]In response to Chief Justice Randolph's dissent, when GCWC affiliated with Assemblies of God it did so as a local "General Council Affiliated Church." According to the District's constitution, a local General Council Affiliated Church

> has the right of self-government under Jesus Christ, its living Head, and shall have the power to choose or call its pastor, elect its official board, and transact all other business pertaining to its life as a local unit. It shall have the right to administer discipline to its members according to the Scriptures and its constitution or bylaws. It shall have the right to acquire and hold title to property, either through trustees or in its corporate name as a self-governing unit. The fact it is affiliated with The General Council of the Assemblies of God shall in no way destroy its rights as above stated or interfere with its sovereignty.

It was not until after after Beachy had informed the District that GCWC intended to disaffiliate that the District reclassified the local church as a District Supervised assembly.

peaceful resolution of property disputes, and in providing a civil forum where the ownership [and control] of church property can be determined conclusively." ***Id.***; ***Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church***, 393 U.S. 440, 445, 89 S. Ct. 601, 21 L. Ed. 2d 658 (1969). The first amendment to the United States constitution, however, "'severely circumscribes the role that civil courts may play in resolving church property disputes.'" ***Wolf***, 443 U.S. at 602, 99 S. Ct. 3020 (quoting ***Blue Hull***, 393 U.S. at 449, 89 S. Ct. 601). The first amendment, therefore, forbids civil courts from resolving church property disputes by inquiring into and resolving disputed issues of religious doctrine and practice. ***Wolf***, 443 U.S. at 602, 99 S. Ct. 3020; ***Maryland & Virginia Eldership of the Churches of God v. Church of God at Sharpsburg, Inc.***, 396 U.S. 367, 368, 90 S. Ct. 499, 24 L. Ed. 2d 582 (1970) (Brennan, J., concurring). Accordingly, courts may not support the tenets of any one religion and must respect the right of all persons to choose their own course with reference to religious observance. *See **Wolf***, 443 U.S. at 602, 99 S. Ct. 3020. States are free to adopt any approach to adjudicate church property disputes "'so long as it involves no consideration of doctrinal matters, whether the ritual and liturgy of worship or the tenets of faith.'" ***Id.*** at 602, 99 S. Ct. 3020 (quoting ***Sharpsburg***, 396 U.S. at 368, 90 S. Ct. 499) (Brennan, J., concurring).

***Church of God Pentecostal, Inc. v. Freewill Pentecostal Church of God, Inc.***, 716 So. 2d 200, 204-05 (Miss. 1998) (alteration in original) (footnotes omitted). Addressing the property dispute, the chancellor granted the District's motion for summary judgment, stating that "all [GCWC] personal property, real property, and improvements [were] under the control of the District Council." In his order, the chancellor determined that only control, not ownership, of the property was at issue. We disagree, because the District was seeking ownership of all GCWC's real and property by means of a trust.

¶22.    "Mississippi has adopted the 'neutral principles of law' approach for resolving church property disputes." ***Schmidt***, 18 So. 3d at 824 (quoting ***Church of God Pentecostal***, 716 So.

13

2d at 206). This Court has explained that this approach

> relies on objective, traditional concepts of trust and property law familiar to attorneys and judges. It calls "for the completely secular examination of deeds to the church property, state statutes and existing local and general church constitutions, by-laws, canons, Books of Discipline and the like to determine whether any basis for a trust in favor of the general church exists." ***Protestant Episcopal Church in Diocese of New Jersey v. Graves***, 83 N.J. 572, 417 A.2d 19, 23 (1980), *cert denied sub nom.* ***Moore v. Protestant Episcopal Church in Diocese of New Jersey***, 449 U.S. 1131, 101 S. Ct. 954, 67 L. Ed. 2d 119 (1981).

***Church of God Pentecostal***, 716 So. 2d at 205. "Religious documents must be carefully scrutinized in purely secular terms without relying on religious precepts." ***Schmidt***, 18 So. 3d at 824 (citing ***Church of God Pentecostal***, 716 So. 2d at 205-06). In order for the District to gain ownership of the property, "[it] must demonstrate either an actual transfer of property from the congregation to the denomination, an express trust, or clear and convincing evidence evincing an intent on the part of the local congregation to create a 'trust' in favor of the denomination." ***Church of God Pentecostal***, 716 So. 2d at 206.

¶23.    One of the neutral principals allows courts to examine evidence respecting the deed and chain of title of real property being claimed by the competing parties. *Id.* at 205 (quoting ***Graves***, 417 A.2d at 23). Here, the chancellor, *sua sponte*, reopened the record, allowing the admission into evidence of the deed referenced in GCWC's minutes from the November 1988 meeting in which GCWC had accepted the Assemblies of God faith. The deed contains the following language:

> For and in consideration of the sum of ten dollars ($10.00), cash in hand paid, and other good and valuable considerations, the receipt and sufficiency of

14

which are hereby acknowledged, I, Donald O. Simmons, . . . , do hereby sell, convey, bargain, and warrant unto Charles W. Benefield, George Lee Young, and Leslie Thomas, the Board of Trustees of Gulf Coast Worship Center, an unincorporated Religious Organization, and their successors in title . . . the following described real property . . . [metes and bounds description follows].

Based on the record before us, there does not appear to have been an actual transfer of property from GCWC to the District. Furthermore, "[n]one of the elements of creation of an express trust are present, such as the writing, the clear intent of the trustor, or the confirming authority of creation of a trust and the transfer of property by the governing body." *Presbytery of St. Andrew v. First Presbyterian Church PCUSA of Starkville*, 240 So. 3d 399, 405 (Miss. 2018) (citing *Church of God Pentecostal*, 716 So. 2d at 208). Thus, the only issue to be decided is whether the District acquired an implied trust interest.

¶24.    "While an express trust must be written, implied trusts differ in that they arise by implication of the law or are presumed from the circumstances. Mississippi recognizes two types of implied trusts:  (1) constructive trusts and (2) resulting trusts." *Id.*

¶25.    Regarding resulting trusts, this Court has defined them as:

> implied by law from the acts and conduct of the parties and the facts and circumstances which at the time exist and surround the transaction out of which it arises. Broadly speaking, a resulting trust arises from the nature or circumstances of consideration involved in a transaction whereby one person becomes invested with a legal title but is obligated in equity to hold his legal title for the benefit of another, the intention of the former to hold in trust for the latter being implied or presumed as a matter of law, although no intention to create or hold in trust has been manifested, expressly or by inference, and there ordinarily being no fraud or constructive fraud involved.

*Church of God Pentecostal*, 716 So. 2d at 207 (citing 76 Am. Jur. 2d *Trusts* § 166 (1992)).

15

"A resulting trust 'is designed to give effect to the unwritten but actual intention of the parties at the time of the acquisition of title to the affected property.'" ***Presbytery of St. Andrew***, 240 So. 3d at 406 (quoting 8 Encyclopedia of Mississippi Law § 73:2 (2001)).

¶26. We find that evidence presented by both parties created a genuine issue of material fact regarding whether the District has a resulting trust interest in property. The District presented GCWC's application to the Assemblies of God church in which it is claimed that GCWC assumed the responsibilities "set forth in the Constitution and Bylaws of the General Council, and the Constitution and Bylaws of the Assemblies of God District Council[.]" Additionally, the District presented a document concerning GCWC's November 1988 meeting during which the GCWC congregation agreed to adhere to the Assemblies of God faith. The document asserts that a quorum of the GCWC congregation agreed to be governed by the District's Constitution and Bylaws and to "[h]ave the property properly deeded with the name of Assemblies of God on the deed and deeded to the trustees of the local Assemblies of God church and successors in office." After this meeting, a District Superintendent "conferred with Charles Benefield [a GCWC trustee] who assured him [that] the deed was properly worded as required by the General Council."

¶27. But Defendants' evidence contradicts the assertion that GCWC had agreed to include the District's name on the deed. Defendants presented the affidavit of Clara Young, who was present at the November 1988 meeting and was the secretary of GCWC at that time. She averred that she had "no recollection that Pastor E.H. Hassler, or any member of the GCWC

16

church, including but not limited to Trustee Charles Benefield, informed [the District] during or after the business meeting while I was in attendance that the GCWC church would have the Assemblies of God name placed on the church's deed or that the deed was properly worded as required by the District Council." The admitted certified copy of the deed from that particular time adds credence to Clara Young's assertions because the deed does not include either the General Council's, the District's, or the Assemblies of God's name. While we recognize that the deed alone may not be dispositive of the question of ownership, it is relevant and important to a determination of that issue.

¶28.    Evidence of a GCWC trustee's having assured the District that the deed would include its name and the GCWC's adoption of the District's Constitution and Bylaws could demonstrate actual intent to enter into a trust relationship and might give rise to a resulting trust. But the evidence suggests also that, despite being aware of the bylaws' requirements to include the District's name in the deed, GCWC did not follow the bylaws, which weighs against an intent to enter into a trust relationship with the District. *See Church of God Pentecostal*, 716 So. 2d at 208-09. Thus, the conflicting evidence creates a genuine issue of material fact of whether there was an intent by GCWC's board of trustees to create a trust relationship with the District. "Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Hospital MD, LLC v. Larry*, 138 So. 3d 922, 925 (Miss. 2014) (citing *Davis v. Hoss*, 869 So. 2d 397, 401 (Miss. 2004)). Here, the chancellor erred by granting summary judgment in favor of the

17

District because genuine issues of material fact regarding ownership of the property remain.

## CONCLUSION

¶29. Issues concerning disaffiliation, *i.e.*, actions taken at the congregational meeting on March 19, 2017, and whether GCWC was under the District's supervision, are church-governing matters. Thus, the ecclesiastical abstention doctrine deprived the chancellor of jurisdiction to address those claims. But this Court finds that genuine issues of material fact remain regarding ownership of property. Therefore, we reverse the chancellor's grant of summary judgment to the District and remand all issues concerning ownership of property for further proceedings.

¶30. **REVERSED AND REMANDED.**

**KING, P.J., COLEMAN, BEAM AND CHAMBERLIN, JJ., CONCUR. MAXWELL, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY COLEMAN, BEAM AND CHAMBERLIN, JJ.; ISHEE, J., JOINS IN PART. ISHEE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED IN PART BY MAXWELL, J. RANDOLPH, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRIFFIS, J.**

**MAXWELL, JUSTICE, SPECIALLY CONCURRING:**

¶31. Under the First Amendment, church questions—such as who has the authority to act on behalf of the church, who should serve as pastor, and if and when a church may leave a denomination—are just that. They are questions for the church, not the civil court. So it was error for the chancellor not only to entertain these questions but also to enter summary judgment in the District's favor on these ecclessiastical matters.

18

¶32. In its support for the chancellor's decision, the dissenting opinion says it is actually applying the ecclessiastical abstention doctrine. But by declaring that the Assemblies of God is a "hierarchical church" with the District exercising final authority over GCWC, the dissenting opinion is doing the opposite—it is weighing in on church questions. Diss. Op. ¶ 39. And in doing so, the dissent is also *resolving* sharply contested factual disputes surrounding the District's relationship with GCWC. This is also not appropriate on summary judgment.

¶33. The only issue properly before the chancery court was the property question—namely, the District's claim that GCWC intended for its property to be placed in trust under the District's control. I agree with the majority that this much more narrow question involves disputed facts that must be resolved on remand.

¶34. Therefore, I concur with the majority.

**COLEMAN, BEAM AND CHAMBERLIN, JJ., JOIN THIS OPINION. ISHEE, J., JOINS THIS OPINION IN PART.**

**ISHEE, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶35. This case involves the determination of whether summary judgment was properly granted. "Summary judgment is inappropriate where there are undisputed facts which are susceptible to more than one interpretation." *McLeod v. Allstate Ins. Co.*, 789 So. 2d 806, 809 (Miss. 2001) (citing *Canizaro v. Mobile Commc'ns Corp. of Am.*, 655 So. 2d 25, 28 (Miss. 1985)). Further, when undisputed facts are subject to more than one interpretation, this Court "will not hesitate to reverse and remand for a trial on the merits." *Id.* (internal

19

quotation marks omitted) (quoting *Canizaro*, 655 So. 2d at 28).

¶36.     This Court has also stated, however, that "[s]ummary judgment may be *inappropriate* in most complex cases . . . ." *Allen v. Mac Tools, Inc.*, 671 So. 2d 636, 642 (Miss. 1996) (first alteration in original) (emphasis added) (internal quotation mark omitted) (quoting *Cunningham v. Lanier*, 555 So. 2d 685, 687 n.2 (Miss. 1989)).  In the present case, the trial court held a hearing on the motions for summary judgment and made its findings, ultimately granting summary judgment in favor of the District.  A review of the record, however, indicates that genuine issues of material fact remain as to a number of complex issues raised in this litigation.

¶37.     As the Majority notes, the ecclesiastical abstention doctrine may ultimately bar most claims in this case other than those concerning property disputes.  Until the record is more fully developed, however, we cannot make that decision.  Because genuine issues of material fact exist at this point in the case, I would reverse and remand so the record could be further developed and the complex issues further resolved.

**MAXWELL, J., JOINS THIS OPINION IN PART.**

**RANDOLPH, CHIEF JUSTICE, DISSENTING:**

¶38.     Today's case reaches this Court after a pastor and members (collectively, Beachy et al.) of the Gulf Coast Worship Center (GCWC) declined to recognize the authority and/or decisions of the District Council, General Council, and the Harrison County Chancery Court, First Judicial District. Beachy et al. have unconvincingly argued that they retain control over

GCWC. The learned chancellor properly recognized that the District Council retained control over GCWC and that its ecclesiastical decisions were binding on GCWC.

¶39. The Assemblies of God is a hierarchical church.[5] "Hierarchical churches" are "those organized as a body with other churches having similar faith and doctrine with a common ruling convocation or ecclesiastical head." *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 110, 73 S. Ct. 143, 97 L. Ed. 120 (1952). Courts in Mississippi follow these same principles. In a "hierarchical church, . . . local churches are subordinate members of the general church, which maintains ultimate authority or control." *Schmidt v. Cath. Diocese of Biloxi*, 18 So. 3d 814, 818 (Miss. 2009) (citing *Watson v. Jones*, 80 U.S. 679, 726-27, 20 L. Ed. 666 (1872)). The United States Constitution permits "hierarchical religious organizations to establish their own rules and regulations for internal discipline and government" and "requires that civil courts accept their decisions as binding upon them." *Serbian E. Orthodox Diocese for U.S. and Can. v. Milivojevich*, 426 U.S. 696, 724-25, 96 S. Ct. 2372, 49 L. Ed 2d 151 (1976).

¶40. In the Assemblies of God church, the ultimate governing body is the General Council of the Assemblies of God. The General Council has established the rules and regulations for discipline and government. Descending from the General Council, the District Councils are

---

[5] *See also* **Ohio Dist. Council, Inc. of the Assemblies of God v. Speelman**, 47 N.E.3d 954 (Ohio Ct. App. 2016); **Kersh v. Gen. Council of the Assemblies of God**, 535 F. Supp. 494, 495 (N.D. Cal. 1982); **Hatcher v. S.C. Dist. Council of Assemblies of God, Inc.**, 226 S.E.2d 253 (S.C. 1976); **N. Y. Dist. of Assemblies of God v. Calvary Assembly of God**, 409 N.Y.S.2d 842, 843 (N.Y. App. Div. 1978).

21

granted the authority to supervise local assemblies within their territory pursuant to the Constitution of the General Council. The District Councils also have bylaws and constitutions consistent with the General Council's. At the time of affiliation, GCWC also had bylaws and a constitution comporting with those of the General Council and District Councils.

¶41. When GCWC affiliated with the Assemblies of God, it agreed to "[a]ccept and be governed by the Constitution & Bylaws of the General Council and District Council of the Assemblies of God." The GCWC was "itself but a member of a much larger and more important religious organization [(the Assemblies of God)] and [was] under its government and control, and [was] bound by its orders and judgments." *Watson*, 80 U.S. at 726-27.

¶42. Pursuant to its authority under the Constitution of the General Council, the Mississippi District Council for the Assemblies of God placed GCWC under its supervision on March 16, 2017. The District Council exercised its authority when Kevin Beachy refused to renew his pastoral credentials, a condition imposed on all Assemblies of God churches and their pastors.

¶43. As found in their bylaws, "District Supervised Assembly," GCWC was

> subject to the District Officiary for guidance and supervision in all matters, including its transactions, legal or otherwise, elections or appointments and operational affairs. It shall not have the authority to sell, lease, rent, alter, or dispose of any church property, real or chattel, without the consent of the District Superintendents.

Additionally, "all [GCWC] offices and positions [were] . . . vacated" and "[t]he assembly

shall not conduct any business such as election of officers and receiving members, without the consent of the District Superintendent and Sectional Presbyter."

¶44. Without dispute, on March 19, 2017, Beachy et al. conducted a business meeting in violation of the District Council's constitution and bylaws. They voted to disaffiliate from the Assemblies of God and voted to amend their constitution and bylaws by removing a provision that its property would revert to the District Council.

¶45. Once the District Council had made its decision to place GCWC under District Supervision and GCWC refused to recognize that decision as binding, the District Council sought a declaration of rights that its ecclesiastical decision was binding upon the dissidents. The District Council asked that the chancery court grant it declaratory and injunctive relief, seeking a judgment that: (i) the meeting held by the pastor and board of GCWC on March 19, 2017, and the actions taken at the meeting were void; (ii) GCWC had been under the District Council's supervision since March 16, 2017; and (iii) all GCWC personal property, real property, and improvements were under the control of the District Council. The District Council also sought an injunction barring Beachy et al. from claiming any position of authority or, in any way, preventing the District Council's supervision of GCWC.

¶46. Beachy et al. responded by filing a motion to dismiss alleging that the trial court lacked subject matter jurisdiction because (i) the case involved purely ecclesiastical matters that the court is prohibited from considering, (ii) the District Council lacked standing because the defendants lawfully disaffiliated, and (iii) the complaint failed to state a claim upon

23

which relief can be granted. Beachy et al. affirmatively pled that the ecclesiastical abstention doctrine should apply in this case. Curiously, it did not contend that the doctrine applied to the District Council's decision or to their own unlawful act of conducting business without the consent of the District Council.

¶47. "[A] chancellor's findings of fact are unassailable on appeal unless those findings are manifestly wrong." *McCoy v. McCoy*, 611 So. 2d 957, 960 (Miss. 1992) (citing *Dungan v. Dick Moore, Inc.*, 463 So. 2d 1094, 1100 (Miss. 1985)). "We are to accept the chancellor's findings of facts and ensure that those findings are supported by the evidence that was before him." *Elchos v. Haas*, 178 So. 3d 1183, 1191 (Miss. 2015) (citing *David M. Cox, Inc. v. Pitts*, 29 So. 3d 795, 804-05 (Miss. Ct. App. 2009)).

¶48. The chancellor denied the motion to dismiss, finding that

> The General Council of the Assemblies of God and the District, of which GCWC is a member, is a hierarchal church fellowship and as such the court may not interfere in the District's action in placing GCWC under District Supervision or in considering the actions of GCWC at the March 19, 2017 meeting to be void. The District's decisions are those of a higher authority within the church's hierarchal system and are protected by the law of judicial abstention as ecclesiastical disputes. *Mallette v. Church of God International, et al.*, 789 So. 2d 120, 124 (¶ 10) (Miss. Ct. App. 2001).

> The District's petition alleges that GCWC personal property, real property and improvements are under the control of the District the same being accomplished in compliance with the governing constitutions and bylaws of the General Council of the Assemblies of God, the District and GCWC. The bylaws of GCWC cited in paragraph 17 of the District's petition provide that in the event GCWC ceases to function as a church body, its property, real or chattel, shall revert to the District thereby providing standing to the District for the relief it seeks in its petition. *Church of God Pentecostal, Inc. v. Freewill Pentecostal Church of God, Inc.*, 716 So. 2d 200 (Miss. 1998).

24

¶49.    "The ecclesiastical abstention doctrine recognizes that the Establishment Clause of the First Amendment precludes judicial review of claims that require resolution of 'strictly and purely ecclesiastical' questions." *Woodard v. Miller*, 326 So. 3d 439, 444 n.2 (Miss. 2021) (citing *McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.*, 966 F.3d 346, 348 (5th Cir. 2020) (quoting *Milivojevich*, 426 U.S. at 713)). The United States Supreme Court has held that the doctrine provides

> a spirit of freedom for religious organizations, an independence from secular control or manipulation, in short, power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine. Freedom to select the clergy . . . must now be said to have federal constitutional protection . . . against state interference.

*Kedroff*, 344 U.S. at 116 (citing *Watson*, 80 U.S. at 728-29). Today's case involves all three—church government, faith, and doctrine.

¶50.    In this misguided defiance of the District Council's decision, Beachy et al. refused to honor the decisions of the District Council, and at this stage in the litigation, refused to accept the ruling of the chancery court. Beachy et al. continued to file numerous other motions, praying that the chancellor reconsider or alter his denial of their motion to dismiss and arguing unconvincingly that GCWC, and not the District Council, should continue to control GCWC. All parties submitted motions for summary judgment for the chancellor to consider.

¶51.    The chancellor correctly recognized that the ecclesiastical abstention doctrine was applicable, for indeed the Assemblies of God was a hierarchical church. *See supra* ¶ 39. But

Beachy et al. attempted to circumvent the ruling of the court that was based on the ecclesiastical abstention doctrine that the District Council was entitled to assume control. While the language in the majority's footnote 4 is found in the bylaws and constitution, it was no longer applicable once Beachy et al. failed to follow the practices of the church and were under the District Council's supervision. *See* Maj. Op. ¶ 20 n.4.

¶52. When Beachy et al. failed to relinquish control not only of the pulpit but also other church property, another legal principle came into play. "The State has an obvious and legitimate interest in the peaceful resolution of property disputes, and in providing a civil forum where the ownership [and control] of church property can be determined conclusively." ***Church of God Pentecostal, Inc. v. Freewill Pentecostal Church of God, Inc.***, 716 So. 2d 200, 204 (Miss. 1998) (alteration in original) (internal quotation marks omitted) (quoting ***Jones v. Wolf***, 443 U.S. 595, 602, 99 S. Ct. 3020, 61 L. Ed. 2d 775 (1979)). To determine the issue of control, the chancellor reviewed the controlling documents through a secular lens. "Mississippi has adopted the 'neutral principles of law' approach for resolving church property disputes." ***Presbytery of St. Andrew v. First Presbyterian Church PCUSA of Starkville***, 240 So. 3d 399, 404 (Miss. 2018).

¶53. After reviewing the bylaws and constitutions of the General Council, the District Council, and GCWC, the chancellor found that Beachy et al. lacked authority to disaffiliate on March 19, 2017, and amend their bylaws. On March 16, 2017, GCWC was governed by the "Constitutions and bylaws of the General Council, the District, and the Constitution and

26

bylaws of the GCWC itself."

> The applicable General Council (Art. V, 4 d, DKT 69-1, p.17) and District (Art. XII, (d) 4., DKT 69-1, p.83) Bylaws, to which GCWC agreed to be bound when it became an affiliated Assemblies of God church in 1988, provided that the district officiary would be invited to participate in a specially called business meeting in the event the termination of affiliation is under consideration. This requirement is for the express purpose of giving the district officiary the opportunity to present the case for continued General Council affiliation. The District officials were then to have the opportunity to address the congregation in opposition to the disaffiliation vote. No such invitation was given and district officiary did not attend the March 17, 2017 meeting. The same provision in both the General Council and District Bylaws provides that <u>only after</u> the District officiary addresses the assembly may the "final disposition" of the termination proceed in accordance with the constitution and Bylaws of the local church. (*Id.*).

(Alteration in original.) The chancellor granted the District Council's motion for summary judgment, holding that all actions taken at the March 19, 2017 meeting "were void and of no legal effect . . . ." The chancellor further held that GCWC had been under the District Council's supervision since March 16, 2017, and that "all GCWC personal property, real property, and improvements are under the control of the District Council" pursuant to the constitutions and bylaws under which GCWC had agreed to abide. The chancellor subsequently clarified that its order granting the District Council summary judgment was limited to the declaratory relief claim and did not extend to any claim for injunctive relief. Again, the language of footnote 4 was no longer applicable to Beachy et al. after GCWC had been placed under the supervision of the District Council. *See* Maj. Op. ¶ 20 n.4.

¶54.    Despite the chancellor's grant of declaratory relief in favor of the District Council, Beachy defiantly remained in the pulpit, and others acted as the governing board of GCWC.

27

Beachy et al. did not comply with the trial court's order to provide the District Council with information about GCWC's assets. The District Council returned to a civil court, seeking an orderly and peaceful transition of control. The District Council requested that Beachy et al. "cease and desist from acting as or holding themselves out as a board member, trustee, member of any leadership body, and/or pastor of GCWC." The District Council also requested that Beachy et al. "surrender all keys, access codes, account information, and any other documents or tangible things pertaining to the GCWC to the District." After concluding that Beachy et al. failed to make a strong showing of the likelihood of prevailing on appeal, the chancellor entered an Order of Final Judgment on September 29, 2021, granting the relief sought by the District Council.

¶55. Today's record fully supports the learned chancellor's findings and conclusions that the Assemblies of God Church is a hierarchical church and that control of GCWC vested with the District Council. The futile attempt by Beachy et al. to disaffiliate and amend GCWC's constitutions and bylaws were void. The chancellor's order granting summary judgment for the District Council reads: "the District does not seek ownership or title to GCWC real and personal property. It seeks control for the express purpose of installing an interim pastor." The chancellor properly found that when GCWC ceased to operate as an Assemblies of God affiliate, control and authority of GCWC belonged to the District Council.

¶56. I would affirm the learned chancellor's decision and find no reason to remand for

28

further proceedings.

**GRIFFIS, J., JOINS THIS OPINION.**